Decided July 16, 1987

64

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL, OFFICE OF IMMIGRATION AND NATURALIZATION OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, Petitioners-Appellees, vs. ELIZABETH DUMAGAT CUBOL, Respondent-Appellant. | DCA CV. NO. 86-9013 CTC CV. NO. 85-235 MEMORANDUM DECISION |

Counsel for Respondent-Appellant: REYNALDO O. YANA
Attorney at Law
P.O. Box 52
Saipan, CM 96950
Telephone: 234-6529

Counsel for Petitioners-Appellees: ERIC S. SMITH
Assistant Attorney General
5th Floor Nauru Building
Saipan, CM 96950
Telephone: 234-7771

BEFORE: LAURETA, DUENAS, and FITZGERALD,* District Judges

FITZGERALD, Judge:

This is an appeal from the trial court's order deporting appellant Elizabeth Dumagat Cubol from the

--------------------------------------------------

* The Honorable James M. Fitzgerald, Chief Judge, United States District Court, District of Alaska, sitting by designation.

66

Northern Mariana Islands. Petitioner claims she was not deportable by virtue of 3 CMC § 4437(b)(1) because she had a case pending against her employer in the Division of Labor.

## STATEMENT OF THE CASE

Elizabeth Cubol is a resident of the Phillipines who came to the Northern Mariana Islands in 1981 as a nonresident worker. She received an entry permit which was to be valid until January, 1982. In late 1981, Cubol married a Saipan resident and received a new entry permit as an "immediate relative" of a Saipan resident. On April 29, 1985, Cubol was divorced and her entry permit was automatically revoked since her "immediate relative" status ceased.

Cubol then began the application process for receiving a nonresident workers certificate and a new entry permit. On April 29, 1985 Cubol entered into an employment contract with the Northern Marianas Corporation (NMC). Under the terms of this contract Cubol was to work for NMC for one year, from March 1985 until March 1986, but in fact Cubol did not begin work for NMC in April, when the contract was executed, or at any time thereafter. This proposed contract was submitted to the Chief of Labor and approved by the Chief on May 9, 1985. The Immigration and

67

Naturalization Office (INO), however, refused to issue an entry permit because Cubol's application was incomplete.[1]

The INO petitioned for an order deporting Cubol and on June 28, 1985, an order of deportation was issued. Cubol appealed this order to the Appellate Division of the District Court, but the appeal was dismissed by stipulation of Cubol and the INO on December 3, 1985. The terms of the stipulation gave Cubol until December 9, 1985 to complete her application for an entry permit.[2]

On December 4, 1985, the Northern Marianas Corporation repudiated the contract it had executed in April by orally advising Cubol that it would not hire her. Because of NMC's repudiation, Cubol was unable to get the signature on the employment contract which was required to complete her application for an entry permit. On December 6, 1985, Cubol filed an administrative complaint against NMC with the Division of Labor, pursuant to 3 CMC § 4437(b)(1).[3]

------------------------

[1] The INO refused to issue the entry permit because one copy of the employment contract did not have the employer's signature, as required. A copy of the contract is not in the record on appeal, but there is no dispute as to its terms.

[2] The stipulation is also not in the record on appeal, but the parties do not appear to dispute its terms.

[3] The status of this complaint is not clear from the record.

On March 5, 1986, the INO again petitioned for a deportation order, and on April 2, 1986, after a hearing, the trial court issued the deportation order which is the subject of this appeal.

The trial court concluded that unless and until a nonresident worker has been issued a work permit and an entry permit pursuant to 3 CMC § 4435(b) and (c), she cannot be employed in the Commonwealth and cannot, therefore, have an employer against whom a complaint can be filed under § 4437(b)(1). The court began with the premise that a nonresident worker cannot remain legally in the Commonwealth unless he or she has a valid entry permit. See 3 CMC § 4322(i). An employer can hire a nonresident worker only if he strictly complies with the terms of the Nonresident Workers Act, especially 3 CMC § 4431 - § 4435. See 3 CMC § 4413. Since it would be a violation of the law for an employer to hire a nonresident worker who did not possess a valid entry permit, the court concluded that Cubol did not have an "employer" within the meaning of § 4437(b)(1) despite the fact that she had an executed employment contract that had been approved by the Chief of Labor. Because Cubol did not have a valid entry permit or a complaint against an employer, the court determined that she was deportable under the Commonwealth Entry and Deportation Act of 1983, 3 CMC § 4340.

69

## ISSUE

The issue presented for decision is whether an alien whose entry permit has expired, but who has entered an employment contract approved by the Chief of Labor and who has attempted to bring an administrative action against the employer for breach of that employment contract, is deportable despite the provision in 3 CMC § 4437(b)(1). We affirm the trial court's conclusion that an alien whose entry permit has expired is deportable and that such an alien does not have an "employer" within the meaning of § 4437(b)(1). This interpretation of § 4437(b)(1) fully comports with the language and policies of the Nonresident Workers Act and the Entry and Deportation Act.

## ANALYSIS

There were essentially no disputed questions of fact resolved by the trial court and its decision was based entirely on its reading of the relevant statutes. Where the trial court's decision is based on construction of a statute, the question on appeal is whether the trial court correctly interpreted and applied the statute at issue, Moorhead v. United States, 774 F.2d 936, 940 (9th Cir. 1985), and this is a question of law reviewed under the de novo standard. Buttonwillow Ginning Co. v. Federal Crop Ins. Corp., 767 F.2d 612, 613 (9th Cir. 1985).

70

## Arguments on Appeal

It is evidently conceded that if the action filed by Cubol with the Chief of Labor constitutes a "complaint against her employer" within the meaning of the Nonresident Workers Act, 3 CMC § 4437(b)(1), Cubol is not deportable. Section 4437(b)(1) provides:

> If the nonresident worker has filed a complaint against his or her employer with the Chief pursuant to Section 4444, or has filed a lawsuit against his or her employer pursuant to Section 4447(b), he or she shall be permitted to remain within the Commonwealth for a reasonable time to permit his or her complaint to be reduced to judgment. . . . Such a nonresident worker shall be permitted to continue working within the Commonwealth on a temporary basis during the pendency of the complaint . . . .

Section 4444 sets forth the Chief's enforcement powers and the sanctions he may impose on an employer found in violation of the Nonresident Workers Act.

Cubol argues that she is not deportable because she has a complaint against her employer within the meaning of § 4437(b)(1). Cubol concedes that she cannot be employed in the Commonwealth unless and until she has an entry permit, but argues that the employer-employee relationship arises at the time the employment contract is executed, before the entry permit is issued by the INO. Cubol suggests that as soon as the employment contract is approved by the Chief of Labor, it is a valid and enforceable

71

contract which may be sued upon under the terms of § 4444 and § 4437(b)(1). If Cubol may properly bring an administrative action against NMC under these sections, she would not be deportable "for a reasonable time" to permit her complaint to be reduced to judgment. See 3 CMC § 4437(b)(1).

Cubol also argues that once a complaint is filed with the Chief of Labor under § 4437(b)(1), any court order deporting the nonresident worker impermissably interferes with the administrative authority of the agency. Cubol suggests that the Labor Division has primary jurisdiction over this matter, citing C.N.M.I. v. Bonifacio, DCA No. 81-9007 (1983). Cubol argues that the court cannot deprive the Chief of Labor of the opportunity to decide whether a nonresident worker who does not have a valid entry permit may bring a complaint against an employer who has executed an employment contract with the nonresident worker.

The INO argues that Cubol does not have a complaint against her employer under § 4437(b)(1) and is thus deportable, since she does not have a valid entry or work permit. The INO urges that unless and until the steps required by the Nonresident Workers Act have been completed by the worker and employer and an entry permit issued, the worker is not a nonresident worker within the meaning of the Act and her prospective employer is not an employer within the meaning of § 4437(b)(1). The INO suggests that Cubol's

72

proper remedy for her breach of contract action was to file in the Commonwealth Trial Court, and that the Labor Division is not the proper forum for her action.

## Statutory Framework

The only authority provided by either side or relied on by the court below are the statutes. When interpreting a statute, a court's objective is to ascertain and give effect to the intent of the legislature. _Moorhead v. United States_, 774 F.2d 936, 940 (9th Cir. 1985). While it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used, the legislative intent is to be discerned from a reading of the statute as a whole and not from a reading of isolated words. _Moorhead_, at 941. If the legislature has not defined a term in a manner that is helpful, and there is no legislative history that helps give the term a proper interpretation, the statutory language should be construed to give effect to the general purpose of the statute. _In re Adeeb_, 787 F.2d 1339, 1334 (9th Cir. 1986). Finally, if there is a possible conflict between two statutes, the statutes should be read to "give effect to each while preserving their sense and purpose." _People of the Territory of Guam v. Quinata_, 704 F.2d 1085, 1087 (9th Cir. 1983).

The Entry and Deportation Act provides that a nonresident worker is illegally in the Commonwealth and therefore deportable unless he or she has a valid entry

73

permit. 3 CMC § 4322(i) (an excludable alien is one who does not have evidence of a valid entry permit) and § 4340(f) (an alien is deportable if at any time after entry he or she becomes an excludable alien under § 4322). The INO is the only agency with authority to issue entry permits, 3 CMC § 4311, § 4435(c), but an entry permit may be issued in conjunction with a nonresident workers certificate issued under the Nonresident Workers Act. Entry and Deportation Act, 3 CMC § 4331(e) (INO cannot issue entry permit to nonresident worker until nonresident worker's certificate has been issued by the Department of Commerce and Labor); 3 CMC § 4332(b)(3) (entry permit issued in conjunction with a nonresident workers certificate may be issued only for the period specified in the certificate). The Director of the Division of Labor has authority to issue the nonresident worker certificate, with the approval of the Chief of Labor. Nonresident Workers Act, 3 CMC § 4435(b). The INO may then, based upon the certificate, grant or deny issuance of an entry permit. 3 CMC § 4435(c). See Entry and Deportation Act, 3 CMC § 4332(a)(1) - (3) (grounds upon which issuance of an entry permit may be denied).

Application for a nonresident workers certificate and an entry permit involves the following steps. An employer first notifies the Chief of Labor of any vacancies, which the Chief will try to fill with resident workers. Nonresident Workers Act, 3 CMC § 4431, § 4432. If the

74

vacancies cannot be filled with resident workers and the employer wants to hire a nonresident worker, the employer must enter a nonresident employment agreement with the Chief of Labor. 3 CMC § 4433. The employer must then submit a fully executed employment contract between himself and the nonresident worker. 3 CMC § 4434(a).[4] The Chief then ascertains that the nonresident worker and the employment contract meet all requirements and notifies the employer whether he has approved or disapproved the employment contract. 3 CMC § 4434(c). Once the contract has been approved by the Chief under § 4434(c), the Director of the Division of Labor issues a nonresident workers certificate which is forwarded to immigration authorities "for such immigration clearance as may be required by law." 3 CMC § 4435(b). The immigration authorities then determine whether or not an entry permit will be issued based on the nonresident workers certificate. 3 CMC § 4435(c).

----

[4] Section 4434(a) provides in pertinent part:

Prior to the entry of the nonresident worker into the Commonwealth for employment under the provisions of this Chapter or, if the worker is already within the Commonwealth, prior to commencing employment, the employer shall present to the Chief . . . a fully executed employment contract between the employer and the nonresident worker which shall be contingent on approval by the Chief . . . .

75

When Cubol's entry permit was automatically terminated due to her divorce, she became deportable. 3 CMC § 4340(f). Cubol's attempts to find new employment and the execution of the contract with NMC did not change her status as a deportable alien since these steps were only prefatory to issuance of a new entry permit. Cubol was in fact ordered deported, but her appeal was dismissed by stipulation, and the INO gave her a number of days to complete her application. She was thus not deportable again until that time expired, or until December 9, 1985. Before expiration of that time, on December 5, 1985, Cubol filed her complaint against NMC with the Chief of Labor. Cubol was therefore deportable on December 9, 1985 unless she falls within the exception of § 4437(b)(1).

The interpretation of § 4437(b)(1) adopted below comports with the stated policy of the Nonresident Workers Act. It is the policy of the Commonwealth that resident workers be given preference in employment within the Commonwealth. Nonresident Workers Act, 3 CMC § 4411. The legislature concluded that while the employment of nonresident workers may be necessary "at the present state of economic development," their employment in the Commonwealth should be "temporary and generally limited to the duration of the specific job of employment for which the alien was recruited." Id. The legislative policy statement in the Entry and Deportation Act states that "[e]ntry to the

76

Commonwealth is a privilege extended to aliens only upon such terms and conditions as may be prescribed by law." Entry and Deportation Act, 3 CMC § 4302(b). From these statements it is evident that the legislature intended to permit legal entry of aliens only in narrowly defined situations. Those who were permitted to enter to work in the Commonwealth were to remain only for the duration of the jobs for which they were recruited and only so long as they had a valid entry permit. See Entry and Deportation Act, 3 CMC § 4332(b)(3) (entry permit issued in conjunction with a nonresident certificate expires on the date the certificate expires); § 4437(b) (nonresident worker shall depart the Commonwealth within 20 days after the expiration or other termination of the employment of the worker under the Act).

Cubol argues that § 4437(b)(1) creates an exception for nonresident workers without a valid entry permit so long as they have begun the process for obtaining a certificate and entry permit and have some complaint or grievance against their potential employer. Cubol argues the nonresident worker has an "employer" within the meaning of § 4437(b)(1) as soon as the employer-employee relationship rises and the contract is approved by the Chief of Labor. Cubol's interpretation of § 4437(b)(1) is not inconsistent with the language of the Nonresident Workers Act, but would mean that an alien who never received an entry permit and never worked legally in the Commonwealth,

or an alien whose entry permit expired and who remained illegally in the Commonwealth thereafter, would not be deportable so long as he or she had filed a complaint or grievance against their potential or former employer. This interpretation conflicts with the express provisions of the Entry and Deportation Act, 3 CMC § 4322(i) and § 4340(f), which provide that any alien without a valid entry permit is deportable, and with the policy of the Nonresident Workers Act, 3 CMC § 4411, which provides that nonresident workers should be permitted to remain in the Commonwealth only so long as their employment requires.

Moreover, Cubol's construction of § 4437 would essentially allow the Department of Labor to control the entry of aliens in derogation of the clear statutory directive that only the Immigration and Naturalization Office may issue entry permits, and that only those who possess such an entry permit may legally remain in the Commonwealth. See 3 CMC § 4311(c)(3), § 4331(a), § 4340(f). If Cubol's construction is accepted, a nonresident worker would be able to remain in the Commonwealth without ever having received a valid certificate or entry permit. A court should avoid interpretations of a statutory provision which would defy common sense, lead to absurd results, or render other words surplusage. Pacific Mutual Life Ins. v. American Guaranty Life Ins. Co., 722 F.2d 1498, 1500 (9th Cir. 1984).

78

The definition of employer in the Nonresident Workers Act is not helpful to either Cubol or the INO. The Act defines the term "employer" as "any individual, partnership, association, or corporation hiring, employing, or otherwise engaging for compensation any resident worker or nonresident worker to perform services of labor within the Commonwealth." 3 CMC § 4412(h). The use of the present rather than the future tense in the definition implies that the nonresident worker is in fact working and thus already possesses an entry permit, since without one he or she cannot be employed. However, the term itself is used throughout the Act to refer to a person who will hire the nonresident worker once the entry permit is issued, and could be read that way in § 4437(b)(1). Nonetheless, a reading of the whole Act compels the conclusion that the legislature did not intend to authorize aliens to remain in the Commonwealth past the expiration of their entry permits except in the event that an employer for whom a nonresident worker was actually working violated the terms of the Act and the complaint was filed while the worker's entry permit was still valid or within 20 days of its expiration. See 3 CMC § 4437(b).

As noted above, the legislature intended the employment of nonresident workers to be temporary and limited to the duration of a specific job. 3 CMC § 4411. The Nonresident Workers Act is designed to regulate the

79

hiring of nonresident workers and their employment in the Commonwealth after the certificate and entry permit are issued. See e.g.,3 CMC § 4421 (duties of Chief of Labor under Act include establishment of referral services for resident and nonresident workers, surveying manpower needs, overseeing the use of nonresident workers, including wages, working hours, health benefits, etc., and enforcing agreements entered between the Chief and employers). The procedures for receiving a nonresident workers certificate are prefatory to the INO's ultimate issuance of an entry permit and actual employment of the nonresident worker is contingent upon issuance of the entry permit. 3 CMC § 4435(c) (after the Chief of Labor has issued the nonresident workers certificate, the INO shall within 30 days either issue the appropriate entry documents or specify in writing its reasons for denying entry documents). Thus the Act as a whole favors a reading of § 4437 which only includes nonresident workers who either have a valid certificate and entry permit or had a valid certificate and entry permit which expired within 20 days previous to the initiation of an action under § 4437(b)(1).

Section 4437(b)(1) should also be read in conjunction with § 4444, which is the section pursuant to which Cubol's complaint was filed. Cubol contends that § 4444(a)(2) gives the Chief the authority to enforce her contract with NMC, and that she thus comes within the

express terms of § 4437(b)(1). Section 4444 is an enforcement provision which authorizes the Chief of Labor to investigate and punish violations of the Act. However, section 4444(a)(1) and (a)(2) only authorize the Chief to issue a warning or a notice of violation to the employer if the Chief determines that the employer is in violation of "any agreement or contract entered hereunder."[5] Although § 4444(e)(5) authorizes the Chief to transfer the aggrieved employee to another employer, such a transfer is still contingent upon the issuance of an entry permit by the INO. See 3 CMC § 4444(f). No provision of § 4444 gives the Chief of Labor authority to enforce an employer-employee contract. Moreover, an anticipatory breach by an employer may not amount to a "violation" of the contract within the meaning of § 4444 since there is nothing in the Act which compels the employer to keep his agreement with the nonresident worker.

Cubol also seems to argue that unless the term employer in § 4437(b)(1) is interpreted to refer to a person who has contracted with a nonresident worker, whether or not that worker has or ever had a valid entry permit, any rights

---

[5]     The term "agreement" is defined by the Act as "a nonresident employment agreement between the Chief of Labor and an employer pursuant to Section 4433." The term contract" is defined as "a contract between a non-resident worker and an employer, pursuant to Section 4434." 3 CMC § 4412(a) and (e).

81

the worker may have under the employment contract would be meaningless. See Appellant's Brief at 6-7. The issue here, however, is not whether Cubol has a cause of action against NMC for breach of contract, but whether Cubol is deportable because she does not have a valid entry permit. A construction of the term "employer" in Nonresident Workers Act which does not include NMC in no way effects Cubol's contractual rights against NMC. Such a construction simply results in the conclusion that she is deportable and has no effect on her contractual rights. See 3 CMC § 4447(b) (nothing in Chapter precludes any private redress or right of action otherwise available to a nonresident worker).

Cubol's argument that the trial court erred by deporting her without deferring to the primary jurisdiction of the Chief of Labor is an issue that was apparently not raised below. The general rule is that a court of appeals will not address issues raised for the first time on appeal. Bolker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir. 1985); Int'l Union v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir. 1985); U.S. v. Whitten, 706 F.2d 1000, 1012 (9th Cir. 1983) cert. denied 465 U.S. 1100 (1984). While there are exceptions to this rule, see Whitten, it is the appellant's burden to show whether they come within an exception and what exception it might be.

82

## CONCLUSION

We conclude that the trial court correctly held that § 4437(b)(1) was meant to apply only to working nonresident workers, in other words, either those who possessed a valid entry permit at the time their complaint was filed, or those whose entry permit expired less than 20 days previously. See § 4437(b) (nonresident worker must depart the Commonwealth within 20 days after the expiration or termination of their employment under the Act). This construction avoids any serious conflict between the Entry and Deportation Act and the Nonresident Workers Act and gives effect to the purposes of both Acts. Cf. People of the Territory of Guam v. Quinata, 704 F.2d at 1087.

The decision of the trial court is therefore in all respects AFFIRMED.

_____
JUDGE ALFRED LAURETA

_____
JUDGE CRISTOBAL C. DUENAS

_____
JUDGE JAMES M. FITZGERALD

83