**Donald Joe MOORHEAD, dba Don Moorhead Harvesting Company, Plaintiff/Appellant,**

v.

**UNITED STATES of America, Defendant/Appellee.**

**Clifton GATTIS, dba Packing Company, Plaintiff/Appellant,**

v.

**UNITED STATES of America, Defendant/Appellee.**

No. 84–1949.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1985.

Decided Oct. 18, 1985.

---

Robbins & Green, Wayne A. Smith, Janet B. Hutchison, Phoenix, Ariz., for plaintiff-appellant.

Richard Farber, Laurie A. Snyder, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WALLACE and POOLE, Circuit Judges, and BREWSTER *, District Judge.

BREWSTER, District Judge:

## BACKGROUND FACTS AND PROCEEDINGS

In this case we are called upon to decide whether an alien "commuter" commuting daily or seasonally to the United States to perform agricultural labor in the United States is exempt from the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101–3126, under the foreign-agricultural-worker exemption of Section 3121 of the Internal Revenue Code.[1] The appellant-employers brought suit against the United States of America (the "Government") claiming that the wages they had paid to their alien "commuter" employees were exempt from FICA taxation. The district court granted the Government's motion for summary judgment and dismissed the plaintiffs' complaints, holding that the wages appellants had paid to their alien "commuter" employees are not exempt from FICA taxes under 26 U.S.C. § 3121(b)(1) because that section exempts only agricultural workers admitted under the H–2 program. We affirm because the employees' status as "commuter" aliens precludes their "employment" from being exempted under section 3121(b)(1).

Plaintiff-appellant Don Moorhead ("Moorhead") operated an agricultural harvesting business during the years 1977, 1978, and 1979, in which he employed hundreds of agricultural workers during the harvesting season to work in the Imperial Valley of California and elsewhere. Moorhead would contract with a grower to harvest a crop, usually lettuce crop, the grower paying a fixed rate per pound or crate of produce harvested. A majority of these workers were aliens,[2] mostly Mexican citizens or residents of Mexico.[3] Each alien worker held a valid Alien Registration Receipt Card or "green card,"[4] permitting

* The Honorable Rudi M. Brewster, United States District Judge for the Southern District of California, sitting by designation.

1. The foreign-agricultural-worker exemption states:

    For purposes of this chapter, ... the term "employment" ... shall not include—(1) service performed by foreign agricultural workers lawfully admitted to the United States from the Bahamas, Jamaica, and the other British West Indies, or from any other foreign country or possession thereof, on a temporary basis to perform agricultural labor....
    26 U.S.C. § 3121(b)(1)

2. "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

3. The parties' briefs and argument did not address the "commuter" status of the few non-Mexican aliens whose "employment" for appellants is allegedly exempt from FICA taxation

under 26 U.S.C. § 3121(b)(1)(B). See Alvarez v. District Director of INS, 539 F.2d 1220, 1224 (9th Cir.1976) ("commuters" reside in a contiguous country), cert. denied, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977). Because the parties had stipulated that all of the alien workers were "commuters," we assume that all such workers, Mexican and non-Mexican, resided in Mexico.

4. "Green card" is the colloquial name of an Alien Registration Receipt Card (Form I–151). See Gooch v. Clark, 433 F.2d 74 (9th Cir.1970), cert. denied, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971). A "commuter" or "green-card commuter" is an alien who maintains his residence in Canada or Mexico and crosses daily into the United States for employment and who is admitted for permanent residence in the United States. See Alvarez v. District Director of INS, 539 F.2d 1220, 1224 (9th Cir.1976), cert. denied, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977). To obtain initial admission into the

him to commute to the United States, daily or seasonally, from Mexico. During the harvesting season, Moorhead's foremen would transport Mexican workers from California border towns to the fields in the morning and return them to the border towns in the evening, when the workers would presumably return to their residences in Mexico.

In the years 1977, 1978, and 1979, Moorhead withheld and collected FICA taxes from the alien workers and paid the employer and employee portions of the tax. Thereafter Moorhead filed a claim for refund of the employer portions of the tax he had paid for those three years. He claimed the workers were lawfully admitted to the United States on a temporary basis to perform agricultural services and, therefore, their wages were exempt from FICA taxation under the foreign-agricultural-worker exemption of 26 U.S.C. section 3121(b)(1). The IRS disallowed the claims and Moorhead filed this suit in the district court in November 1980, seeking, *inter alia,* a refund of the employer portion of FICA taxes paid during those years, approximately $100,000.

During 1972, plaintiff-appellant Clifton Gattis ("Gattis") provided similar agricultural harvesting services in Arizona, New Mexico, and Michigan, employing hundreds of alien agricultural workers. Like Moorhead's employees, most of Gattis' workers were "green card" holders who resided in Mexico and commuted daily or seasonally to the United States. Unlike Moorhead, Gattis did not pay any FICA taxes on the wages he had paid to such alien workers in 1972. After an audit, the IRS determined FICA taxes were due, Gattis paid the tax, and he filed a claim for a

refund. The basis for Gattis' initial failure to pay as well as the basis for his refund claim was the foreign-agricultural-worker exemption of section 3121(b)(1). The IRS disallowed the claim and in November 1981, Gattis filed this suit claiming damages in the amount of his claimed refund, approximately $11,500.

The district court consolidated the two suits for discovery and pretrial motions. In February 1984, the district court granted the Government's summary judgment motion and dismissed appellants' complaints. In an unpublished memorandum decision, the district court held that only agricultural workers admitted under the H–2 program, 8 U.S.C. § 1101(a)(15)(H)(ii), are admitted to the United States for the purpose of performing agricultural work on a temporary basis; since appellants' alien workers are not H–2 workers, the section 3121(b)(1)(B) exemption is inapplicable.

Appellants bring this consolidated appeal claiming the district court erred in not holding that section 3121(b)(1) exempts from FICA taxes the wages paid to their alien agricultural workers, who were lawfully admitted to the United States on a temporary basis as "commuter" aliens.

## STANDARD OF REVIEW

▮▮▮ Both parties agree that there are no genuine issues of material fact to preclude the entry of summary judgment. *See, e.g., Prestin v. Mobil Oil Corp.* 741 F.2d 268 (9th Cir.1984). In fact, before the Government had moved for summary judgment, the parties had entered into an extensive stipulation of facts, which was the foundation of the district court's findings of fact.[5] A grant of summary judgment is

---

United States, the commuter must follow normal immigration procedure. He must apply for an immigration visa and meet all the requirements of the Immigration and Naturalization Act. Once he is lawfully admitted, the "commuter" receives a "green card" which he uses as an entry document following a temporary absence from the United States.

**5.** The parties' stipulation of fact provides in part:

10. During the years in suit, neither plaintiffs petitioned the Immigration and Naturalization Service ... to have any of their employees classified as temporary workers pursuant to 8 U.S.C. Section 1101(a)(15)(H)(ii), commonly referred to as the H–2 program....

13. None of the information retrieved from INS identified any person as having entered the U.S. under the H–2 program.

reviewed de novo. *Lane v. Goren,* 743 F.2d 1337 (9th Cir.1984); *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). Where, as here, there are no contested issues of fact, we need only decide whether the district court correctly applied the substantive law, *Lane* 743 F.2d at 1339; *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984), that is, did the district court correctly interpret and apply the statutes in issue. *See, e.g., United States v. Roberts,* 747 F.2d 537, 546 (9th Cir.1984).

## DISCUSSION

We begin with FICA and the particular language of section 3121(b)(1). FICA imposes on every employee, 26 U.S.C. § 3101, and employer, *id.* § 3111, a tax with respect to the "wages"[6] paid in "employment."[7] The employee's FICA tax is a fixed percentage of the wages he is paid, *id.* § 3101, and the employer portion is a fixed percentage of the wages he pays to each employee. *Id.* § 3111. It is undisputed that the remuneration appellants paid their alien workers during the years in question is "wages," the dispute concerns whether the workers were engaged in "employment," as FICA defines that term.

FICA excludes twenty enumerated categories of employment from its general definition of "employment" One of the excluded categories is defined as:

> Service performed by foreign agricultural workers lawfully admitted to the United States ... from any other foreign

country ... on a temporary basis to perform agricultural labor.

26 U.S.C. § 3121(b)(1). The Social Security Act of 1954 sets forth a parallel exclusion, which uses verbatim language to preclude temporary foreign agricultural workers from obtaining social security benefits.[8]

The Government argues that the plain language of section 3121(b)(1) exempts the wages only of those agricultural workers: (1) lawfully admitted to the United States on a temporary basis; and (2) lawfully admitted to the United States for the purpose of performing agricultural labor. The Government concludes that since the status of an alien "commuter" is that of a permanent resident, the exemption is inapplicable to appellants' workers. Only H–2 program workers are admitted to the United States on a temporary basis for the purpose of performing agricultural work, and, as a result, only H–2 workers can be exempt.

Appellants argue that section 3121(b)(1)'s temporariness requirement should not be defined by reference to immigration laws, but rather determined as a matter of fact on a case-by-case basis. They claim section 3121(b)(1)'s legislative history "clearly indicates" that Congress intended to eliminate the migrant farm worker or "commuter" segment of employees from FICA tax withholding and the corresponding benefits.

When interpreting a statute, the court's objective is to ascertain the intent of Congress and to give effect to legislative will. *E.g., Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d

---

14. Plaintiffs contend that all of their workers held valid alien registration cards (i.e. green cards") during the years in suit.... Record at 3–4

Thus, appellants admitted that their workers were not admitted under the H–2 program and both parties agreed the workers were alien "commuters."

6. "Wages" means: "all remuneration for employment...." 26 U.S.C. § 3121(a) (1985).

7. Employment means "any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States...." 26 U.S.C. § 3121(b).

8. 42 U.S.C. § 410(a)(1) (1985) provides:

The term "employment" means any service performed ... after 1950(A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, ... except that, in the case of service performed after 1950, such term shall not include—

(1) Service performed by foreign agricultural workers lawfully admitted to the United States from the Bahamas, Jamaica, and the other British West Indies, or from any other foreign possession thereof, on a temporary basis to perform agricultural labor....

525 (1975); *United States v. American Trucking Associations,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Trailer Train Co. v. State Board of Equalization,* 697 F.2d 860, 865 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). It is assumed that the legislative purpose is expressed by the ordinary meaning of the words used, *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962); *Hughes Air Corp. v. Public Utilities Commission,* 644 F.2d 1334, 1337 (9th Cir.1981), and absent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Consumer Products Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ We read the language of the statute according to its plain meaning and agree with the Government's construction of section 3121(b)(1); i.e., that the statute imposes two requirements. The foreign agricultural worker must be: (1) lawfully admitted to the United States on a temporary basis (temporariness requirement); and (2) lawfully admitted to the United States ... to perform agricultural labor (purpose-of-admission requirement). *See* 26 U.S.C. § 3121(b)(1).

■ Another canon of statutory construction, while not a controlling consideration, supports this construction of section 3121(b)(1). Grants of tax exemptions are narrowly construed against the assertions of the taxpayers and in favor of the taxing power. *E.g., Bingler v. Johnson,* 394 U.S. 741, 752–53, 89 S.Ct. 1439, 1445–46, 22 L.Ed.2d 695 (1969); *Commissioner v. Jacobson,* 336 U.S. 28, 48–49, 69 S.Ct. 358, 368–69, 93 L.Ed. 477 (1949); *Atlantic Coast Line Railroad v. Phillips,* 332 U.S. 168, 172, 67 S.Ct. 1584, 1586, 91 L.Ed. 1977 (1947); *Helvering v. Northwest Steel Rolling Mills, Inc.,* 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29 (1940); 3C. *Sands, Sutherland Statutory Construction* § 66.-

09, at 207 (1974). This canon seeks to tax income comprehensively, *Commissioner v. Jacobson,* 336 U.S. at 49, 69 S.Ct. at 369, and to minimize differential treatment and foster impartiality, fairness and equality of treatment among taxpayers.

Turning to the temporariness requirement of section 3121(b)(1), we reject appellants' argument that "on a temporary basis" should be decided on a case-by-case basis. Appellants ask the court to examine the facts of this case and fashion a test to determine whether appellants' workers were working in the United States "on a temporary basis." A common law approach is unnecessary, however, because Congress has spoken.

■ A statute is passed in whole and not piecemeal. Thus, in interpreting a statute, examination of the whole, not isolated words, will disclose legislative intent. *See Stanford v. Commissioner,* 297 F.2d 298 (9th Cir.1961). When viewed in context, section 3121(b)(1) exempts foreign agricultural workers lawfully admitted to the United States on a temporary basis.

Nothing in FICA or the Social Security Act defines which aliens are lawfully admitted to the United States on a temporary basis. However, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1503, establishes a comprehensive scheme for aliens' exclusion from and admission to the United States. One looks to the INA and immigration regulations to ascertain the prerequisites of lawful admission and the term and conditions of an alien's lawful presence in the United States.

■ In the absence of a definition in FICA, we find that when Congress wrote "lawfully admitted" to the United States it intended to incorporate the INA and concomitant body of regulations and administrative practice to define that term.

The INA establishes a status for aliens seeking admission to the United States, which status dictates the admissibility of an alien. The immigration status of appellants' alien workers is determinative of whether the workers are "lawfully admit-

ted" to the United States on a temporary basis.

The INA distinguishes two categories of aliens: nonimmigrants and immigrants. 8 U.S.C. § 1101(a)(15). Section 1101(a)(15) supplies a negative definition of immigrant: "The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens— [listing 15 nonimmigrant categories]." An alien who fits in one of the 15 exclusionary categories in section 1101(a)(15) is a nonimmigrant. The number of immigrants admitted to the United States is restricted by immigrant quotas. *See* 8 U.S.C. § 1181(a); *Saxbe v. Bustos,* 419 U.S. 65, 66–67, 95 S.Ct. 272, 275, 42 L.Ed.2d 231 (1974). However, a nonimmigrant is permitted admission to the United States irrespective of such quota limitations. *See id.* at 67, 95 S.Ct. at 275.

One category of nonimmigrant, the H–2 worker, is "an alien having a residence in a foreign country which he has no intention of abandoning ... who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country...." 8 U.S.C. § 1101(a)(15)(H)(ii).

Appellants' workers are not H–2 workers because they cannot show that "unemployed persons capable of performing such service or labor cannot be found in this country." *See Gooch v. Clark,* 433 F.2d 74, 78 (9th Cir.1970), *quoting* 8 U.S.C. § 1101(a)(15)(H)(ii), *cert. denied,* 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971); 8 C.F.R. § 214.2 (1985). Appellants' workers are not H–2 workers and do not fit within any of the other exclusionary categories of section 1101(a)(15). Consequently, they are deemed immigrants under section 1101(a)(15). *See Gooch,* 433 F.2d at 78.

■ Generally, an immigrant will not be admitted into the United States without a valid unexpired immigration visa and a passport. 8 U.S.C. § 1181(a). However, "returning resident immigrants, defined in section 1101(a)(27)(A) ... who are otherwise admissible may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, reentry permit or other documentation." *Id.* § 1181(b). A resident immigrant or "special immigrant" is defined as: "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad." *Id.* § 1101(a)(27)(A).

In *Gooch,* 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971), we upheld the INS's longstanding practice of classifying "commuters" as section 1101(a)(27)(B) "special immigrants," 433 F.2d at 78, permitting the Attorney General to admit "commuters" under the informal documentation requirements of section 1181(b), and exempting "commuters" from the quota limitations applicable to immigrants and the labor certification requirements applicable to H–2 workers.

The Supreme Court adopted much of *Gooch's* reasoning in *Saxbe v. Bustos,* 419 U.S. 65, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974). In *Saxbe* the United Farm Workers Committee brought suit challenging the INS's practice of allowing aliens to commute to places of employment in the United States on a daily or seasonal basis as "special immigrants." The Court upheld the INS's practice and reasoned that because "commuters" do not fall within any of the nonimmigrant categories of section 1101(a)(15), they are immigrants. *Id.* at 71, 95 S.Ct. at 277. A "special immigrant" is "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad." 8 U.S.C. § 1101(a)(27)(B). Section 1101(a)(20) defines "lawfully admitted for permanent residence," as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." This section 1101(a)(20) status is acquired when "an alien satisfies (1) any numerical limitations on the entry of immigrants, (2) requirements as to qualitative matters such as health, morals, and economic status, and (3) the need for an immigrant visa. The

applicant must also state whether he plans to remain in the United States permanently." *Saxbe*, 419 U.S. at 72, 95 S.Ct. at 277 (footnotes omitted). The INA does not state that the status will be denied him if he does not intend to reside permanently in the United States. *Id.* "[T]he status acquired carries several important privileges: [the commuter] may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States." *Id.* Relying on the reasoning of *Gooch*, the Court found that a "commuter's" nightly or seasonal departure from the United States to his foreign residence is a "temporary visit abroad" from which he returns when he reenters the United States for employment. *Id.* Finally, in concluding that "commuters" are "special immigrants" admittable irrespective of quotas or labor certification, the court placed great weight upon the INS's longstanding construction of the statute and practice of treating "commuters" as "special immigrants," which longstanding practice had been acquiesced in by Congress. *Id.* at 73–80, 95 S.Ct. at 278–281.[9]

This Court again faced the "commuter" issue in *Alvarez v. District Director of INS*, 539 F.2d 1220 (9th Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977). The plaintiff, a native of the Philippines, entered the United States as a permanent resident in 1968 and returned to the Philippines in 1970 where she worked as a pharmacist.. Between 1970 and 1973, she made several brief trips to the United States to visit friends, gaining admission to this country with a "green card." In upholding an immigration judge's order of deportation, we held the plaintiff did not fall within the "commuter" category because: she did not come to the United States to work; she did not commute daily or seasonally; and her home is

not in a country contiguous to the United States. *Id.* at 1224.

Under *Gooch*, *Saxbe*, and *Alvarez*, appellants' alien workers may have entered the United States to perform agricultural work; however, their status as "commuters" precludes us from finding they were lawfully admitted to the United States on a temporary basis. To have become a "commuter," each of appellants' workers must have acquired the status referred to in section 1101(a)(20), *viz.*, "the status of having been lawfully accorded the privilege of residing permanently in the United States." 8 U.S.C. § 1101(a)(20); *see also Saxbe* 419 U.S. at 71–72, 95 S.Ct. at 277. Their "commuter" status permitted them to take up permanent residence in the United States at the conclusion of their work for appellants; their status permitted them to leave the United States at the conclusion of their work for appellants and, subject to certain limitations, return to the United States sometime thereafter; and their status permitted them, at the conclusion of their work for appellants, to engage in nonagricultural work in the United States.

Appellants' workers also do not satisfy the purpose-of-admission requirement of section 3121(b)(1)(B). Appellants' workers were not admitted to the United States solely for the purpose of performing agricultural labor. As "commuters" they were admitted to the United States with no limitation on their lawful activity. When they entered the United States they could have worked in whatever occupation they chose, without regard to any labor certification restrictions. A "commuter's" status is different from that of H–2 workers. *See Saxbe*, 419 U.S. at 69–70, 95 S.Ct. at 276. An H–2 worker is a nonimmigrant, an alien "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of

**9.** In addition to the discussion in *Saxbe* the history of the INS's "commuter" practice is recounted elsewhere. Article, *The Alien Commuter After Saxbe v. Bustos*, 8 U.C.D.L.Rev. 33, 35–

41 (1975); Note, *Aliens in the Fields: The "Green-Card Commuter" Under the Immigration and Naturalization Laws*, 21 Stan.L.Rev. 1750, 1752–61 (1969).

performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii). An H–2 worker must be coming to the United States only for a temporary period; the employer's need for the alien workers skill or job duties must be temporary; and in most cases H–2 status requires a certification from the Department of Labor that qualified persons in the United States are not available and that the employment of the alien will not adversely affect the wages and working conditions of similarly employed workers in the United States. *See* 8 U.S.C. § 1101(a)(15)(H)(ii); 8 C.F.R. § 214.2(h)(3)(i) (1985); 3 *Immigration Law Report* 1–3 (January 1984). While appellants ' "commuter" workers do not satisfy the purpose-of-admission requirement of section 3121(b)(1)(B), H–2 agricultural workers could, in instances where the workers are admitted specially to perform agricultural labor.[10]

Appellants argue that section 3121(b)(1)'s legislative history clearly indicates that Congress intended to eliminate the migrant farm worker or commuter segment of employees from FICA.

This Court has said:

> [I]f evidence drawn from the face of the statute militates strongly for one interpretation, but not quite so strongly that the legislative history may safely be ignored, the legislative history should be considered but considered, cautiously. Under these circumstances a second interpretation should be accepted on the basis of the legislative history only if the evidence is very strong, which will usually require explicit language.

*Heppner v. Alyeska Pipeline Service Co.,* 665 F.2d 868, 873 (9th Cir.1981); *accord Tulalip Tribes v. FERC,* 732 F.2d 1451, 1454 (9th Cir.1984).

In accordance with *Heppner,* we review the legislative history of section 3121(b)(1)(B) with caution to determine whether the evidence is "very strong" and there is "explicit language" to support the assertions of appellants.

Our review of section 3121(b)(1)'s legislative history reveals that the foreign-agricultural-worker exemption grew out of the so-called Bracero Program, a temporary worker program created in World War II to counteract labor shortages.[11] The predecessors to section 3121(b)(1) permitted a FICA tax exemption for foreign workers with a status significantly different from that of appellants' workers. Not an iota of this history links the "green card" commuter with the section 3121(b)(1) exemption. None of this history is antithetical to our conclusion that the status of commuters, possessing the privilege to remain and work in the United States, precludes them from the section 3121(b)(1) exemption. Thus, we do not find "very strong" evidence or "explicit language" in the legislative history that Congress intended to exempt appellants and their employees from the payment of FICA taxes under section 3121(b)(1).

In conclusion, we find that the appellants' employees status as "commuters," enjoying the privilege to establish permanent residence in the United States, precludes their "employment" from being exempted under section 3121(b)(1).[12]

AFFIRMED.

**10.** In granting the Government's motion for summary judgment, the district court held that only H–2 workers qualify for the section 3121(b)(1) exemption. Given the facts in this case and our conclusions that appellants' workers are "commuters" and not H–2 workers, and that "commuters" are not exempt under section 3121(b)(1), we do not reach the broader issue.

**11.** Congressional Research Service, The Select Committee on Immigration and Refugee Policy, Temporary Worker Programs: Background and Issues, 96th Cong., 2d Sess. 6–15 (1980).

**12.** Appellants also claim that the Government's position leads to an unfair result: their workers will contribute to the Social Security system, but they cannot receive benefits from the system. This is not the case.

Eligibility for old age, disability, and survivor's insurance benefits is based upon the length of employment in the United States. Generally, one is not fully insured for such benefits unless he has 40 calendar quarters ("QC") of coverage. 20 C.F.R. § 404.110 (1984). A person is credited with a QC for any calendar quarter in which he

has worked in this country and was paid $50 or more. *Id.* § 404.141(b).

A person may become eligible for Social Security benefits regardless of his country of citizenship or country of residence, although prolonged absence from the United States can result in the loss of eligibility. *See* 42 U.S.C. § 402(t)(1) (1983). It is provided, however, that otherwise eligible citizens of Mexico may be paid benefits regardless of the duration of their absence from the United States. *Id.* § 402(t)(2). This is because Mexico, like the United States, has a social security system under which benefits are payable to noncitizens regardless of the country of their residence. *See* 20 C.F.R. § 404.463(a)(7) (1984).