**Albert H. MEYERHOFF,**
**Plaintiff–Appellant,**

v.

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY,**
**Defendant–Appellee.**

No. 90–15263.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1991.

Decided March 19, 1992.

ALARCON, Circuit Judge:

We consider whether conflict of interest forms filed by members of the Environmental Protection Agency's Scientific Advisory Panel (SAP) and Science Advisory Board (SAB) may be withheld under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

## FACTS AND PROCEDURAL HISTORY

The SAP and SAB are scientific panels that advise the Environmental Protection Agency (EPA). The SAP renders advice on the impact of proposed EPA pesticides regulations on health and the environment. 7 U.S.C. § 136w(d). The SAB renders advice on a wide range of environmental issues and the integrity of the EPA's research. 42 U.S.C. § 4365. Pursuant to the Ethics in Government Act, 5 U.S.C.App. 4 § 207(a)(1), the EPA requires the scientists on these panels to file conflict-of-interest reports that list their employment and financial interests, including the names of corporations and other institutions with which they are associated or in which they have a financial interest. 40 C.F.R. §§ 3.302, 3.602.

Albert Meyerhoff is an attorney with the Natural Resources Defense Council. On November 27, 1985, he filed a FOIA request for copies of financial disclosure statements filed by SAP and SAB scientists between January 1, 1981, and November 27, 1985. The EPA responded by letter on December 18, 1985, informing him that it intended to deny his request in a subsequent letter. On March 6, 1986, Meyerhoff informed the EPA that he was construing the EPA's December letter as a denial and that he wished to appeal. He subsequently narrowed his request to information concerning the scientists' employment and financial interests in the petrochemical and pesticide industries, and to the identity of the interests and sources of income without regard to specific amounts. By letter of May 13, 1988, the EPA denied Meyerhoff's

Patti A. Goldman, Public Citizen Litigation Group, Washington, D.C., for plaintiff-appellant.

Jason R. Baron, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

request on the basis of FOIA exemptions 3, 4, and 6.

Meyerhoff filed suit pursuant to 5 U.S.C. § 552(a)(4)(B), seeking an order compelling the EPA to make the financial disclosure records available. Both sides moved for summary judgment. The district court granted summary judgment in favor of the EPA, holding that the information was properly withheld under FOIA exemption 3, which exempts from disclosure matters that are specifically exempted from disclosure by some other statute. 728 F.Supp. 613. The court found that the Ethics in Government Act of 1978 qualifies as a withholding statute under this exemption. The district court did not reach the EPA's alternative arguments that the information was also exempt from disclosure under FOIA exemption 4, which allows the withholding of confidential commercial or financial information, and FOIA exemption 6, which allows the withholding of information when disclosure would be a clearly unwarranted invasion of privacy. Meyerhoff appeals.

### DISCUSSION

Meyerhoff contends that the limited information he seeks regarding potential conflicts of interest of SAP and SAB scientists must be disclosed by the EPA because it does not qualify for nondisclosure under any of the specifically enumerated exemptions to FOIA. The EPA contends that the financial information statements are appropriately withheld pursuant to Exemptions 3, 4, and 6 of FOIA. Without reaching the applicability of Exemptions 4 and 6, we hold that the EPA may withhold the conflict of interest records under Exemption 3.

### I. *Exemption 3*

Exemption 3 of FOIA provides that the Government may withhold information that is:

specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for with-

holding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Parts A and B of this exemption provide alternative grounds for withholding information. *Long v. IRS*, 742 F.2d 1173, 1178 (9th Cir.1984).

In applying Exemption 3 to the facts of this case we must inquire: (1) whether the Ethics in Government Act qualifies as an Exemption 3 withholding statute under either Part A or B of 5 U.S.C. § 552(b)(3), and (2) whether the information withheld falls within the scope of the Ethics in Government Act. *See, e.g., Lessner v. United States Dep't of Commerce*, 827 F.2d 1333, 1335–37 (9th Cir.1987); *National Comm'n on Law Enforcement v. CIA*, 576 F.2d 1373, 1376–77 (9th Cir.1978).

### A. *Does the Ethics in Government Act Qualify as a Withholding Statute Under Exemption 3?*

The EPA contends that sections 207(a)(1) and (2) of the Ethics in Government Act (Ethics Act) qualify as withholding statutes under Exemption 3 and, therefore, nondisclosure of the information requested by Meyerhoff was justified. Meyerhoff argues that sections 207(a)(1) and (2) fall short of Exemption 3's requirements.

Prior to 1985, section 207(a) provided:

The President may require officers and employees in the executive branch ... not covered by this title [sections 201 to 211 of this Act] to submit confidential reports in such form as is required by this title. Subsections (a), (b), and (d) of section 205 shall not apply with respect to any such report.

5 U.S.C.App. 4 § 207(a) (1982).

In 1985, section 207(a) was amended, and subsection 207(a)(2) was added. Subsection 207(a)(2) provides that "[a]ny information required to be provided by an individual under this subsection shall be confidential and shall not be disclosed to the public." This amendment took effect in March of 1986. Meyerhoff concedes that the language "shall not be disclosed to the public" constitutes a mandatory nondisclosure pro-

vision within the meaning of Exemption 3(A). He contends, however, that this amendment has no effect on his request because he is seeking disclosure of reports filed by members of SAB and SAP prior to the effective date of the amendment. He argues that the amendment cannot apply retroactively to records predating its passage. We do not reach the issue whether subsection 207(a)(2) applies retroactively because we conclude that the pre–1985 section 207(a) qualifies as a withholding statute under Exemption 3(A).

As noted above, Exemption 3 provides that a statute which specifically exempts the disclosure of information is a withholding statute only if it also meets the requirements of subsections (A) or (B). Under subsection (A), the statute must "require[ ] that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). This subsection "embraces only those statutes leaving no room for administrative discretion to disclose." *Long*, 742 F.2d at 1179 (citing *American Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C.Cir.1978)). "Although Exemption 3(A) applies only to statutes which 'leave no discretion' to the administrative agency, that limitation applies only to the decision whether matters should be withheld *'from the public.'* *Medina–Hincapie v. Department of State*, 700 F.2d 737, 741 (D.C.Cir.1983) (emphasis in original) (quoting 5 U.S.C. § 552(b)(3)(A) (1976)). Meyerhoff argues that section 207(a) does not fall within Exemption 3(A) because under the EPA's own regulations, the agency has unfettered discretion to disclose the report he seeks. We disagree.

We begin by noting that our analysis does not consider what discretion the agency regulations purport to give the agency. Instead, our analysis focuses on what discretion the statute leaves to the agency. *See id.* at 742 n. 20 ("An *unauthorized* disclosure of documents does not change the nature of the statute, nor does it constitute a waiver of the applicable FOIA exemption." (emphasis in original)). We conclude that pre–1985 section 207(a) does not leave discretion to the EPA to disclose to the public the confidential reports filed by SAP and SAB members.

"When interpreting a statute, the court's objective is to ascertain the intent of Congress and to give effect to legislative will." *Moorhead v. United States*, 774 F.2d 936, 941 (9th Cir.1985). "It is assumed that the legislative purpose is expressed by the ordinary meaning of the words used, and absent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive." *Id.* (citations omitted). The language of the pre–1985 section 207(a) specifically exempted the reports filed under that section from the Ethics Act's public disclosure requirements in sections 205(a), (b), and (d). Thus, section 207(a) provided that confidential reports required by the President were not to be disclosed to the public. This interpretation is supported by the structure and history of the Ethics Act.

Pursuant to the Ethics Act, officers and employees of the executive branch are required to file reports disclosing detailed financial and employment information. 5 U.S.C.App. 4 §§ 201, 202. These reports are available to the public. *Id.* at § 205(a). Under section 201(h) of the Ethics Act, however, an individual who "is not reasonably expected to perform the duties of his office or position for more than sixty days in a calendar year" is exempt from filing these detailed reports. The members of the SAP and SAB fall within this category. Under the original Act, these part-time employees were exempt from filing annual reports, but were still required to file entrance and termination reports. In 1979, Congress amended the act to clarify "that if no annual report is required, no report ancillary to it, either initial or terminating, should be required." H.R.Rep. No. 114 (Part II), 96th Cong., 1st Sess. 9, 10 (1979), *reprinted in* 1979 U.S.C.C.A.N. 144, 160. The legislative history to that amendment also includes the following statements:

It should be observed in this connection that these short-term employees will still have to file such confidential financial statements as are required by Executive Order of the President....

The committee has been advised that this amendment has direct relevance to the operations of the Government. Several candidates for nomination to important Governmental advisory boards, who serve purely in a part-time capacity, requested that their nominations be withdrawn because of the public disclosure provisions. *It was intended that no public disclosure be required in the case of these short term employees,* and this amendment assures that this intent is implemented.

*Id.* (emphasis added).

Furthermore, the 1985 amendment to section 207, providing mandatory nondisclosure language, can be interpreted as clarifying, rather than changing, the law to reflect the intent of Congress as stated above. *United States v. Tapert,* 625 F.2d 111, 121 (6th Cir.) ("An amendment to an existing statute is not an acknowledgment by Congress that the original statute is invalid. It is a common and customary legislative procedure to enact amendments strengthening and clarifying existing laws."), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

Based on the foregoing analysis, we conclude that the pre–1985 section 207 qualifies as a withholding statute under Exemption 3(A) because it leaves no discretion to the agencies on whether the confidential reports can be disclosed to the public.

B. *Does the Information Sought by Meyerhoff Fall Within the Scope of Section 207 of the Ethics Act?*

Meyerhoff argues that, even if the Ethics Act is a withholding statute, it does not apply to the information he seeks. He argues that section 207's exemption from public disclosure is conditioned on the promulgation of regulations that were not issued until 1986. Meyerhoff's argument is as follows: From May 8, 1965, to September 25, 1986, the only Presidential directive for obtaining conflict of interest information from executive branch employees was Executive Order (E.O.) 11,222. *See* Exec. Order No. 11,222, 30 Fed.Reg. 6469 (1965).

E.O. 11,222 provided, in pertinent part, as follows:

Each agency shall, at the time of employment of a consultant, adviser, or other special Government employee require him to supply it with a statement of all other employment.... In addition, it shall list such other financial information as the appointing department or agency shall decide is relevant in the light of the duties the appointee is to perform.

*Id.* at § 306. Information obtained pursuant to E.O. 11,222 was subject to FOIA. *See Washington Post Co. v. United States Dep't of Health and Human Servs.,* 690 F.2d 252 (D.C.Cir.1982) (conflict of interest information provided by National Health Service SAB members under E.O. 11,222 must be publicly disclosed unless within FOIA exemption.)

In 1978, Congress passed the Ethics Act, in part because there was no law requiring public disclosure by any members of the executive branch. S.Rep. No. 170, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S.C.C.A.N. 4216, 4244. The Act specifically stated that it "supersede[s] any general requirement under any other provision of law or regulation with respect to the reporting of information required for purposes of preventing conflicts of interest." Pub.L. No. 95–521, § 207(c), 92 Stat. 1849 (1978). Thus, Meyerhoff argues, the President had no authority under E.O. 11,222 to obtain information that was not available to the public. *See* 131 Cong.Rec. 35,331 (1985) (Department of Justice interpreted the Ethics Act as eliminating Presidential authority to require reporting under E.O. 11,222).

If the Act gave the President the authority to collect "confidential" information, Meyerhoff argues, it conditioned that authority on the promulgation of new regulations. Thus, the Ethics Act states that "[t]he President may require officers and employees in the executive branch ... not covered by this title to submit confidential reports *in such form as is required by this title.*" Pub.L. 95–521, § 207(a), 92 Stat. 1849 (1978) (emphasis added).

When the Ethics Act was amended in 1985, it continued this condition precedent, saying that "[a]ny information required to be filed by an individual *under this subsection* shall be confidential and shall not be disclosed to the public." 5 U.S.C.App. 4 § 207(a)(2) (emphasis added).

Meyerhoff argues that the President did not exercise his authority under section 207 until he issued E.O. 12,565, on September 25, 1986. This order specifically repealed the reporting provisions of E.O. 11,222 and replaced them with a new system of reporting, pursuant to the authority and requirements of section 207. E.O. 12,565 (Sept. 25, 1986).

Meyerhoff concludes that, since the information he seeks was provided pursuant to E.O. 11,222, which was neither in the form required by Title II of the Ethics Act, nor promulgated under the authority of section 207, the information is not within the scope of section 207's exemption from FOIA.

We disagree. The President had the authority, under section 207, to obtain information from SAP and SAB members which would not be publicly disclosed. Prior to the 1985 amendment, the President had required the submission of financial information pursuant to E.O. 11,222. Because financial information was already required under E.O. 11,222 when the Ethics Act was passed in 1978, there was no need to promulgate new regulations under section 207 to obtain the same information. We have found nothing in the Ethics Act which prohibited the President from continuing to collect information under the existing executive order.

We conclude that the Ethics Act qualifies as an Exemption 3 withholding statute and that the information which was withheld pursuant to E.O. 11,222 falls within the scope of section 207 of the Ethics Act. We AFFIRM the district court's decision that the information sought by Meyerhoff was properly withheld pursuant to Exemption 3 of FOIA.

KOZINSKI, Circuit Judge, concurring in the judgment.

I agree with my colleagues that conflict of interest forms filed by members of the Environmental Protection Agency's Scientific Advisory Panel (SAP) and Science Advisory Board (SAB) may be withheld under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. I reach this result, however, not as they do under exemption 3,[1] but rather under exemption 6.[2]

Judge Alarcon finds, and Judge Rymer agrees, that the pre–1985 version of section 207 of the Ethics in Government Act qualifies as a mandatory withholding statute. I cannot agree with this conclusion. Judge Alarcon apparently relies upon "[t]he language of the pre–1985 section 207(a)[, which] specifically exempted the reports filed under that section from the Ethics Act's public disclosure requirements in sections 205(a), (b), and (d)." Alarcon opinion at 1501. But section 205 provides only that certain reports *must* be made available to the public; exempting reports from that requirement does not mean that they must *not* be made available. As Judge Alarcon correctly notes, for exemption 3 to apply "the statute must 'require[ ] that the matters be withheld from the public in such a manner as to leave *no discretion* on the issue.'" Id. (quoting 5 USC § 552(b)(3)) (emphasis added). Exempting a report from a mandatory disclosure requirement leaves disclosure within the discretion of the agency. The pre–1985 version of section 207 therefore does not satisfy the requirements of exemption 3.

---

1. Exemption 3 allows the government to withhold matters

   specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 USC § 552(b)(3).

2. Exemption 6 allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

The key to this case is the 1985 amendments to section 207(a). First, Congress enacted section 207(a)(1) in its present form, requiring the President to issue regulations prescribing what is to be filed and by whom. Second, it added 207(a)(2), providing that "[a]ny information required to be provided by an individual under this subsection shall be confidential and shall not be disclosed to the public."

The EPA argues, and the appellant concedes, that the language of 207(a)(2), if it applies, turns section 207 of the Ethics in Government Act into a mandatory nondisclosure provision within the meaning of FOIA exemption 3. Appellant, however, correctly points out that this language does not cover the reports that are the subject of the FOIA request. By its own terms, the new language applies only to "information required to be provided by an individual under this subsection." The reports in question were prepared and submitted prior to the 1985 amendments and therefore couldn't have been submitted thereunder. Hence, this statute does not specifically exempt from disclosure the matters at issue, and does not bring these reports within FOIA exemption 3.

The new statutory language is relevant, however, in analyzing FOIA exemption 6. Although the district court based its ruling on FOIA exemption 3, we may affirm the district court's decision on any ground that was before the district court. *Jewel Cos. v. Pay Less Drug Stores N.W.*, 741 F.2d 1555, 1564–65 (9th Cir.1984).

The Supreme Court has construed exemption 6 to require "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" *Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); see also *Department of State v.*

*Ray*, —— U.S. ——, 112 S.Ct. 541, 547–48, 116 L.Ed.2d 526 (1991). This balancing also implicates important public policy concerns. Here, for example, the EPA must be able to recruit highly qualified scientists to serve on its advisory panels; the risk that information provided in conflict of interest forms will be made public may deter qualified individuals from serving on these panels. The problem is particularly acute because the scientists are part-time government employees who will continue their private sector employment, and information contained in the conflict of interest forms may be divulged to their competitors or potential employers and clients.

Appellant points out, however, that the scientists' dual professional employment gives rise to a competing interest in public disclosure of the scientists' private sector employment and financial interests. Congress created the panels to render independent scientific advice to the EPA; disclosure of information concerning panel members' ties to the petrochemical and pesticide industries might reveal potential biases or conflicts of interest. The public has a significant interest in being made aware of such biases so that it may properly assess the soundness of the panels' advice.

In the typical exemption 6 case, we would be required to balance these competing interests. *Ray*, 112 S.Ct. at 548–50. In this highly unusual case, however, Congress has already performed the balancing. The new language passed in 1985 is an expression of congressional policy on the precise question presented to us. Congress balanced the public's interest in disclosure and the individuals' interest in privacy; it concluded that the type of personnel information appellant seeks should not be disclosed.[3] We are not free to second-guess the balance struck by Congress. Accordingly, the EPA properly withheld the

---

**3.** Judge Rymer suggests that "Congress has done nothing more than merely declare, without expressing its reasons, that henceforth certain information should not be disclosed." Rymer opinion at 1505. When that information is personnel reports such as those involved in this case, however, such a congressional determina- tion necessarily elevates privacy interests over disclosure. This conclusion does not render exemption 3 "superfluous," as Judge Rymer also suggests. See id at 1505 n. 3. If the reports sought did not implicate privacy concerns, exemption 6 would be inapplicable.

3120–1 forms pursuant to FOIA exemption 6.

For this reason, I agree that the judgment of the district court should be affirmed.

RYMER, Circuit Judge, concurring in the judgment.

I write separately because, in my opinion, FOIA Exemption 3 provides a basis for withholding the documents Meyerhoff requested, but Exemption 6, upon which Judge Kozinski relies, may not.

Exemption 6 applies to materials that, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This exemption requires a balancing of "the individual's right of privacy" against FOIA's purpose to make documents public. *See Department of Air Force v. Rose*, 425 U.S. 352, 372–73, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); *United States Dep't of State v. Ray*, — U.S. —, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). Under Judge Kozinski's approach, no court will have performed any such balancing, and there is no indication that Congress has done so, either.[1] The 1985 amendment to subsection 207(a) merely states that the information at issue in this case "shall be confidential and shall not be disclosed to the public," Ethics in Government Act Amendments of 1985, Pub.L. No. 99–190, § 148(b)(3), 99 Stat. 1185, 1324, 1325 (1985); Congress "never said boo," *see Z Channel Ltd. Partnership v. Home Box Office, Inc.*, 931 F.2d 1338, 1345 (9th Cir.1991) (Kozinski, J., dissenting), *cert. denied*, — U.S. —, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992), about balancing individual rights against the public's need to know. Without any such guidance, we ought not simply to presume that Congress had a particular balancing result in mind.[2]

Congress has done nothing more than merely declare, without expressing its reasons, that henceforth certain information should not be disclosed. When Congress makes such a declaration, we need not perform an independent balancing under Exemption 6, because we must defer to that congressional policy under Exemption 3.[3] Exemption 3 applies to material "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3); Congress need give no reason explaining why it chooses to exempt a particular class of documents from disclosure. Simply declaring documents exempt makes them so. That is what Congress has done here.

The reports Meyerhoff wants were filed pursuant to 5 U.S.C.App. 4 § 207(a). The 1985 amendment modified subsection 207(a), stating that "[a]ny information required to be provided by an individual under this subsection shall be confidential and shall not be disclosed to the public." I interpret "this subsection" to mean subsection 207(a), not (a)(2). Because the information at issue in this case was filed under subsection 207(a) and the amendment applies to documents filed under subsection 207(a), the amendment applies.

---

**1.** Nor did the EPA balance the interest of board members in personal privacy against the public interest in disclosure. *Cf. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604; *Ray*, 112 S.Ct. at 550 (Scalia, J., concurring). Also missing is the kind of record that allowed the Court in *Ray* to evaluate whether the agency has discharged its burden of demonstrating that the requested disclosure would constitute a clearly unwarranted invasion of privacy. *See Ray*, 112 S.Ct. at 548–50. Further, to accept a congressional declaration in lieu of balancing writes off the books the burden *Rose*, *Ray*, and *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989), place on the agency to justify the withholding of requested documents. Finally, while it may be appropriate to consider congressional policy in undertaking the balancing of personal interests against the public interest in disclosure, to defer entirely abdicates judicial responsibility.

**2.** I note, without deciding whether Exemption 6 would apply after a *judicial* balancing, that given the limited nature of Meyerhoff's request, the government might have a difficult time showing that the privacy right here outweighs disclosure in this case.

**3.** Judge Kozinski would turn every Exemption 3 case into an Exemption 6 case by presuming a balancing result in the face of congressional silence. We should avoid such a construction because it would render Exemption 3 superfluous.

For this reason, I agree that the district court's decision should be affirmed.