217 B.R. 281 (1998)
In re SUN WORLD INTERNATIONAL, INC., Debtor.
AAI SERVICES, INC., Appellant,
v.
UNITED STATES of America, Appellees.
No. CV 97-5453 JMI, Bankruptcy No. SB 94-23212-DN, Adversary No. SB 96-1288-DN.
United States District Court, C.D. California.
January 27, 1998.
*282 Michael S. Harms, Corona Del Mar, CA, for Appellant.
Nora M. Manella, U.S. Atty., Edward M. Robbins, Asst. U.S. Atty., Chief, Tax Division, Thomas D. Coker, Asst. U.S. Atty., Los Angeles, CA, for Appellee.

ORDER REVERSING RULING OF THE BANKRUPTCY COURT
IDEMAN, District Judge.
IT IS HEREBY ORDERED:
This appeal considers whether work performed by Special Agricultural Worker applicants (a status of alien workers created by Congress in 1986), is exempt from employment taxation. AAI Services, Inc. appeals from the Bankruptcy Court's order granting summary judgement in favor of the United States.
REVERSED.

JURISDICTION
On June 17, 1997, the United States Bankruptcy Court for the Central District of California issued an order granting summary judgement in favor of the United States of America. On June 24, 1997, the Appellant filed a Notice of Appeal and an Objection to Hearing and Disposition by the Bankruptcy Appellate Panel. Therefore, this Court has jurisdiction under 28 U.S.C. § 158(a).

BACKGROUND
This case arises from actions on the part of the Internal Revenue Service to impose federal employment taxes on labor performed by employees of AAI Services (AAI), the plaintiff and appellant herein.
Plaintiff AAI, a California corporation, employs foreign agricultural workers to harvest seasonal crops. Between 1988 and 1991, AAI paid over $30 million in wages to agricultural workers. Believing that the workers were exempt from federal employment tax liability under 26 U.S.C. § 3121(b)(1), AAI did not *283 pay the taxes. Following an audit, the IRS assessed taxes for the wages. In April 1994, AAI paid a nominal amount of the assessment and filed a claim for a refund of that amount. In December 1994, AAI filed a bankruptcy petition under Chapter 11. In 1996, AAI filed the complaint for refund that eventually gave rise to the present appeal.
Cross-Motions for Summary Judgement came before the Honorable David N. Naugle, United States Bankruptcy Judge. On June 17, 1997, Judge Naugle granted summary judgement in favor of the government. Judge Naugle found that the Ninth Circuit's construction of 26 U.S.C. § 3121(b)(1) in Moorhead v. United States, 774 F.2d 936 (9th Cir .1985) bound him to hold for the government.
AAI argues that the Bankruptcy Court erroneously likened the facts and of this case to those in Moorhead, and thus misapplied the holding of Moorhead. The United States argues that the Bankruptcy Court committed no such error.

DISCUSSION
I. ISSUE
This appeal raises one issue:
Did the Bankruptcy Court err in determining that Special Agricultural Workers, ("SAWs") as defined by 8 U.S.C. § 1160 and employed by AAI Services, do not fall within the exemption from employment taxes set forth in Internal Revenue Code § 3121(b)(1)?
II. STANDARD OF REVIEW
The Court reviews Bankruptcy Court orders under the clearly erroneous standard for factual determinations and de novo for conclusions of law. In Re Windmill Farms, Inc., 841 F.2d 1467, 1469 (9th Cir.1988); In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir.1984). The case came before the Bankruptcy court on stipulated facts. Thus, this Court conducts de novo review of the present legal issue.
Grants of tax exemptions, such as the one at issue in this case, are narrowly construed against the assertions of the taxpayers and in favor of the taxing power. Moorhead v. United States, 774 F.2d 936, 941 (9th Cir.1985) (citations omitted).
III. ANALYSIS
A. FICA Tax Liability
The Federal Insurance Contributions Act (FICA) imposes a tax on every "employee" and "employer", with respect to "wages" paid in "employment." 26 U.S.C. §§ 3101-28. The definitions of the above-quoted terms in FICA determine, in part, the scope and impact of the tax. FICA excludes numerous categories of work from its general definition of "employment." The particular exclusion at issue in the present case is in section 3121(b)(1):
"Service performed by foreign agricultural workers lawfully admitted to the United States . . . from any other foreign country . . . on a temporary basis to perform agricultural labor."
26 U.S.C. § 3121(b)(1)(emphasis added). In short, FICA's definition of "employment" includes agricultural labor performed by aliens within the United States, unless the labor is excluded by 26 U.S.C. § 3121(b)(1).
B. Special Agricultural Workers
The Immigration Reform and Control Act of 1986 (IRCA) established an amnesty program for illegal aliens working in the United States. 8 U.S.C. § 1160. Under the IRCA, aliens working in the United States may qualify to legally work and reside in the United States as "Special Agricultural Workers."[1] The section provides procedures whereby the alien's status may be adjusted to that of an alien lawfully admitted for *284 temporary residence and later to that of an alien admitted for permanent residence. 8 U.S.C. § 1160(a), (b).
With a careful reading of the plain language of the FICA and the Special Agricultural Worker statute, one might conclude that the SAWs are "agricultural" and those that have been admitted for temporary residence are "temporary," and thus would meet the requirements for their labor to be excluded for employment under Section 3121(b)(1). However, the interaction of these statutes is much more complex than the plain language reveals.
C. The Ninth Circuit's Moorhead Decision
In Moorhead v. United States, supra, the appeals court considered whether alien "commuter" workers, who commuted seasonally or daily to perform agricultural work in the United States were exempt from FICA under Section 3121(b)(1). The Ninth Circuit construed the plain meaning of Section 3121(b)(1) to impose two requirements to be exempt from taxation: (1) the foreign workers must be "lawfully admitted to the United States on a temporary basis" (temporariness requirement); and (2) the foreign workers must be lawfully admitted to the United States to perform agricultural labor (purpose of admission requirement). Id. at 941.
Because the FICA does not define "on a temporary basis" for purposes of the temporariness requirement, the Ninth Circuit looked to the Immigration and Nationality Act (INA) to determine whether an alien has been lawfully admitted on a temporary basis. See 8 U.S.C. § 1101 et seq. Based on prior Supreme Court and Ninth Circuit construction of the immigration statutes, the Ninth Circuit concluded that "immigrants" under the INA were permanent residents and that only "nonimmigrants" were legally admitted on a temporary basis. Id. at 942. Thus, the commuters, who were immigrants, failed the temporariness test.
Additionally, the court found that the commuters, though they did perform agricultural work, failed the purpose of admission requirement, because they were admitted with no limit on their lawful work activities.
The court suggested that only one category of "nonimmigrant" as defined by the INA, would satisfy both of the requirements.[2] The "H-2" category of nonimmigrant is "an alien having a residence in a foreign country which he has no intention of abandoning . . . who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country. . . ." 8 U.S.C. § 1101(a)(15)(H)(ii). The H-2 program has a certification process whereby agricultural and other employers must establish a domestic need for certain types of workers, and then the employers sponsor aliens for legal work status.
D. Special Agricultural Workers and FICA Tax Liability
In the present appeal, the parties agree that, legally, aliens adjusted to temporary or permanent resident status are both treated as permanent residents for FICA purposes. See 8 U.S.C. § 1160(a)(5). Because adjusted aliens are treated as permanent for purposes of FICA, they fail the temporariness requirement under Moorhead, and are not exempt form taxation under Section 3121(b)(1). However, the SAW program allows aliens who have applied for the program, but whose applications have not been acted upon, to be granted work permits. 8 C.F.R. § 210.4(b)(2); see, e.g., Velez v. Coler, 978 F.2d 647, 649 (11th Cir.1992).
AAI contends that those aliens who have obtained work authorization by filing valid applications but have not been adjusted, satisfy the temporariness requirement in Moorhead. All of the workers in this case were in the preliminary application stage, where they had completed applications, paid fees and were issued documents authorizing them to *285 work in the United States. (I-689 Appointment letters or I-688A Authorization Cards) See 8 C.F.R. § 210.4(b)(2). None of the workers in this case had yet attained temporary resident status.
The parties here disagree as to whether the SAW program provides for a two-step or a three-step process for adjustment of an alien to the status of an alien admitted for permanent residence. The Appellant, AAI contends that the INS regulations set up a three stage process: first the alien applies to attain temporary status; second the alien attains temporary status; and lastly the alien attains permanent resident status.
The Appellee, the United States, argues that because the effective date for aliens admitted for temporary residence is retroactive back to the application date, legally, there is no time period when the alien would meet the temporariness requirement of Moorhead. 8 C.F.R. § 210.4(a). Essentially, when the alien's status is retroactively adjusted back to the application date, the alien goes directly from the taxable status as an illegal alien to the taxable status as a temporary resident.
In Velez v. Coler, supra, the Eleventh Circuit examined the legal status of SAW applicants who were working under a temporary work permits while awaiting an adjustment decision. In that case, the court addressed whether the retroactivity provision made an SAW applicant eligible for food stamps under the Food Stamp Act.[3] The court concluded that until a SAW is issued a temporary resident card, he or she has not achieved the status of temporary resident.[4]Id. at 649. It follows that AAI's workers, all valid applicants who had not yet been adjusted, were not yet temporary residents and should not be treated as permanent for taxation purposes under 8 U.S.C. § 1160(a)(5).
Therefore, the subject workers are lawfully admitted on a temporary basis and satisfy the Moorhead temporariness requirement.
E. The Purpose of Admission Requirement
The fact that the SAW statute was enacted the year after Moorhead, makes it necessary for this Court to carefully consider whether SAWs satisfy the purpose of admission requirement.
In Moorhead, after finding that commuter workers did not satisfy the temporariness requirement, the Ninth Circuit found that the commuters' immigration status prevented them from satisfying the purpose of admission requirement of Section 3121(b)(1)(B). Id. at 943. The court reasoned that because the labor activities of the commuters was not limited in any way, the workers were not admitted to perform agricultural labor. Id.
The Appellee reads the Moorhead case to hold that only H-2 workers can meet the requirements of Section 3121(b)(1). Appellee quotes a Seventh Circuit case that purports to rely on Moorhead: "Only aliens lawfully and temporarily admitted to perform agricultural work come within § 3121(b)(1), and only holders of H-2 visas meet that description." Calderon v. Witvoet, 999 F.2d 1101, 1105-07 (7th Cir.1993). While this quotation from Judge Easterbrook's opinion for the panel may accurately state the district court's holding in Moorhead, it clearly misstates the Ninth Circuit's holding. The Ninth Circuit explicitly refused to reach such a holding. 774 F.2d at 944 n. 10.
As this Court reads the opinion, Moorhead states that even though the commuters did not satisfy the purpose of admission requirement, H-2 agricultural workers could, in instances where the workers are admitted specially to perform agricultural labor. Id. at 944. H-2 agricultural workers *286 would meet the purpose of admission requirement because the regulations require that the employer gain certification from the Secretary of Labor that there is a need for the alien and then sponsor the alien for work authorization. Likewise, the SAW program explicitly admits the alien workers for the purpose of performing agricultural work. 8 U.S.C. § 1160. Under the SAW program as it existed at times relevant to this case, the Congress initially, and thereafter Secretaries of Labor and Agriculture jointly, determined the annual numbers of agricultural workers that were needed to harvest seasonal crops. 8 U.S.C. § 1161 (repealed 1994). The prior agricultural work requirement and the determination of need by Congress or the Secretaries provided adequate assurance that the workers would perform the needed agricultural work. 8 U.S.C. § 1161 (repealed 1994).
The Court is reluctant to look beyond the face of the statutes, and only does so cautiously. Moorhead, 774 F.2d at 944. Here, it is acceptable for the court to delve into legislative history only because this is a case of first impression, construing a statute that postdates the leading case.
A cautious look at the legislative history clearly confirms that the IRCA changed the nation's approach to immigration policy, and that the SAW program is a derivative of the H-2 program designed specifically to meet seasonal agricultural labor requirements. H.R.Rep. No. 99-682(I) at 1986 U.S.C.C.A.N. 5653-89.
Accordingly, the Court finds that the SAW applicants satisfy the purpose of admission requirement of Section 3121(b)(1).
In conclusion, AAI's employees, who had validly applied for the SAW program and were working under interim work authorizations while awaiting adjustment determinations, meet the requirements of Section 3121(b)(1) to be excluded from "employment" and to be exempt from FICA. This Court construes this exemption quite narrowly. As the United States argues, the time between application and adjustment ordinarily will only be about thirty days. Furthermore, the duration of the exemption is wholly within the control of the government.

CONCLUSION
Accordingly, the Court REVERSES the Bankruptcy Judge's order granting summary judgement in favor of the United States of America. The case is hereby REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.
REVERSED.
IT IS SO ORDERED.
NOTES
[1] The Special Agricultural Worker Program provides in relevant part:

The Attorney General shall adjust the status of an alien to that of an alien lawfully admitted for temporary residence if the Attorney General determines that the alien meets the following requirements:
[The alien must apply during the application period and] . . . establish that he has
(i) resided in the United States, and
(ii) performed seasonal agricultural services in the United States for at least 90 man-days. . . . [and be admissible as an immigrant].
8 U.S.C. § 1160(a).
[2] The district court had held that "only" H-2 workers qualified for section 3121(b)(1). The Ninth Circuit refused to hold as much, limiting its opinion to the status of commuter workers. Moorhead, 774 F.2d at 944 n. 10. Ironically, Moorhead has been cited for the precise proposition that the Ninth Circuit refused to reach. See Calderon v. Witvoet, 999 F.2d 1101, 1105-07 (7th Cir.1993).
[3] Under the Food Stamp Act regulations, the same operative language determines eligibility for benefits: "lawfully admitted for temporary residence." Id. at 648. However, under the INA and FICA, a temporary resident is deemed to be permanent, and therefore a SAW applicant must avoid temporary resident status to be deemed "temporary" under the Moorhead test.
[4] In Velez the circuit court held that the applicant was not eligible for food stamps during the pendency of the application, and that the state could seek a refund during the pendency of the application. But once the application was approved, the alien was retroactively eligible and the state could no longer seek refund.

The equivalent issue of retroactive taxation or refunds is not before this Court.