**JUDICIAL WATCH, INC.,**
**et al., Plaintiffs,**

v.

**Charles O. ROSSOTTI,**
**et al., Defendants.**

**No. CIV.A.02–928(RMC).**

United States District Court,
District of Columbia.

Sept. 30, 2003.

Larry Elliot Klayman, Washington, DC, for Plaintiffs.

Stuart David Gibson, U.S. Attorney's Office, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

COLLYER, District Judge.

This is a Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), action brought by Judicial Watch, Inc., a public interest organization, and its former chairman and general counsel, Larry E. Klayman (collectively "Judicial Watch"), against the Internal Revenue Service ("IRS"), its former Commissioner, Charles O. Rossotti, the Treasury Inspector General for Tax Administration ("TIGTA"), and the United States Department of Justice ("DOJ") (collectively, "Government").[1] This case presents the questions of whether the IRS,

---

1. Paragraph 1 of the complaint states that jurisdiction also arises under the Privacy Act, 5 U.S.C. § 552a(g)(1). *See also* Complaint ¶ 28 ("Plaintiffs sent FOIA and Privacy Act requests ...."). The single count in the complaint, however, speaks only to FOIA and the parties' briefs address only that statute. Therefore, the Court concludes that there are

TIGTA, and DOJ conducted adequate searches under FOIA and whether those entities properly relied upon various statutory exemptions to withhold documents in whole or in part. Underlying this case is Judicial Watch's belief that it has been subjected to a politically-inspired IRS audit and investigation in retaliation for criticism the organization directed towards, and legal action it took against, former President Bill Clinton and his administration.[2]

Pending before the Court are the parties' cross motions for summary judgment, which have been fully briefed. For the reasons stated below, the Court will grant both motions in part and deny them in part.

## I. BACKGROUND [3]

On October 14, 1998, Judicial Watch submitted a FOIA request to the IRS, including regional agency offices in Washington, D.C.,[4] Philadelphia, Pennsylvania, Detroit, Michigan, Ogden, Utah, and Chamblee and Atlanta, Georgia. In an attempt to discover who had prompted the IRS audit of Judicial Watch and investiga-

tion of its non-profit tax status, this request sought "all correspondence, memoranda, documents, records, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, tape recordings, notes and other documents and things that refer or related to the following in any way: 1. Larry Klayman [and] 2. Judicial Watch, Inc." Affidavit of Melissa D. Stuart ("Stuart Aff.") ¶ 4.[5] The IRS released to Judicial Watch approximately 128 pages of documents in August of 1999; however, the agency redacted all information identifying the individual(s) who requested the audit. The IRS did not include a privilege log or a *Vaughn* index with its document production. *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (requiring "a relatively detailed analysis [of alleged exempt status] in manageable segments" to allow a court to ensure that claimed exemptions "are adequately justified[.]").

This practice essentially repeated itself over the course of a three-year period—

no Privacy Act issues to be determined in this case.

2. The legality of the audit and investigation is *not* part of this litigation; the Court will limit this decision to the FOIA issues.

3. These same parties are engaged in two other lawsuits. In *Judicial Watch, Inc. v. Rossotti*, No. WMN–01–2672, 2002 WL 31962775 (D.Md. Dec. 16, 2002), filed on September 6, 2001, Judicial Watch sought to enjoin the IRS audit. It also asked for an order compelling the IRS to produce documents sought in five of the same FOIA requests that are at issue in this lawsuit: those requests dated October 14, 1998, April 14, 2000, January 13, 2001, July 27, 2001, and December 18, 2001. Affidavit of Stuart D. Gibson ("Gibson Aff.") ¶ 5. The District Court in Maryland dismissed that lawsuit and it is now on appeal. Knowing that this case is pending, the Maryland District Court confined its decision to the docu-

ment requests propounded to the Baltimore Disclosure Office of the IRS. *Id.* at *1 n. 3. In *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C.Cir.2003), the D.C. Circuit reversed and remanded a District Court decision that had denied Judicial Watch a fee waiver for requests for documents unrelated to those before this Court.

4. The IRS's office in Washington, D.C., is under the jurisdiction of the Baltimore office. FOIA requests received in the District are forward to the Baltimore Disclosure Office for processing. Affidavit of Carroll Field ("Field Aff.") ¶ 9 n. 1.

5. All affidavits cited in this memorandum opinion were submitted by the Government in support of its cross motion for summary judgment.

beginning with the October 1998 request—with Judicial Watch ultimately submitting eight FOIA requests to thirteen different offices of the IRS, TIGTA, and DOJ. In six of these requests, Judicial Watch sought documents that "refer or relate" to both plaintiffs; in the other two, it asked IRS Headquarters for information about specific IRS employees.[6] The Government states that it located a total of 3,952 responsive pages of documents, of which it released 3,111 in full, released 471 in part and withheld 316. An additional 54 pages, the Government contends, were not relevant. Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and In Support of Defendants' Cross Motion for Summary Judgment ("Defs.Mot.") at 7. Eight IRS offices did not find any materials related to Judicial Watch's FOIA requests: Detroit, Atlanta District and Campus, IRS Director of Practice, IRS International, Ogden, Philadelphia, and Dallas.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substan-

---

**6.** The second FOIA request was dated April 14, 2000, and was directed to the IRS, the IRS International Division, and Regional Offices in the District of Columbia, Detroit, Ogden, Chamblee and Atlanta. This request was answered on January 29, 2001, by TIGTA and on July 3, 2002, by the IRS, without *Vaughn* indices. The third FOIA request was submitted on January 13, 2001, to the IRS, Mr. Rossotti, TIGTA, and the IRS/Exempt Organizations Division ("IRS/EOD"); TIGTA responded on April 16, 2001 and the IRS responded on July 3, 2002, without *Vaughn* indices. The fourth FOIA request was submitted on July 27, 2001, to Mr. Rossotti, IRS, IRS/EOD, TIGTA, and the IRS regional offices in Cincinnati and Dallas. Cincinnati responded by August 24, 2001, and IRS/HWD responded on July 3, 2002, without a *Vaughn* index. The fifth FOIA request was submitted on July 31, 2001, to the Office of Information and Privacy ("OIP"), the Tax Division, and the Criminal Division of DOJ. For reasons that are unexplained, Judicial Watch received a February 25, 2002, response from the Immigration and Naturalization Service—now called the Bureau of Citizenship and Immigration Services—which was then part of DOJ. On May 8, 2002, OIP responded as well. The sixth FOIA request was submitted on August 16, 2001, to the IRS seeking information on certain IRS employees, including those with a relationship to American Management Systems, Inc., a company with ties to Commissioner Rossotti. This request was supplemented on August 21, 2001 (the seventh request). The IRS responded to these August requests twice in October 2001 and once in March 2002. The eighth FOIA request was submitted on December 18, 2001, directed to Mr. Rossotti, IRS, IRS/EOD, TIGTA, and IRS/Cincinnati. As of August 7, 2002, when this suit was filed, these requests remained outstanding. The Division of Tax wrote to Judicial Watch in July 2002, forwarding several documents, but withholding over 100 pages of additional documents in whole or in part. Judicial Watch states that it is "unclear" to which FOIA request this letter responded. Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.Mot.") at 11.

tive outcome of the case. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

### B. FOIA

FOIA provides an avenue for the public to obtain records from a federal administrative agency.[7] *Valencia–Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C.Cir.1999) ("The fundamental principle animating FOIA is public access to government documents."). Under this statute, "an agency is obligated to make 'promptly available' records that are 'reasonably described' in a written request therefor and are not exempt from disclosure." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C.Cir.1996). An agency's search must be "reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.Cir. 1990).

■ Upon receipt of a FOIA request, an agency must determine within 20 days whether it will comply and "immediately notify the person making such request of such determination and the reasons therefor .…" 5 U.S.C. § 552(a)(6)(A)(i). "If the agency has not responded within the statutory time limit[ ], then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C.Cir.1990). Once the agency has responded, however, even if late, the requester must appeal any dispute through the administrative process prior to filing a lawsuit. *Id.* at 61.

While FOIA represents a strong congressional commitment to the disclosure of government information, *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct.

1592, 48 L.Ed.2d 11 (1976), it also contains a number of exemptions that allow an agency to withhold all or part of a document. 5 U.S.C. § 552(b)(1)-(9). "These exemptions are specifically made exclusive … and must be narrowly construed.'" *Rose*, 425 U.S. at 361, 96 S.Ct. 1592 (internal citations omitted). A court reviews an agency's exemption claims *de novo*. 5 U.S.C. § 552(a)(4)(B). "The 'burden is on the agency' to show that requested material falls within a FOIA exemption." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992).

At issue in this lawsuit are FOIA Exemptions 3, 5, 6 and 7, which are briefly discussed as follows.

### 1. Exemption 3

Under Exemption 3, an agency may withhold documents that have been specifically exempted from disclosure by another statute, "provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "A statute qualifies as a withholding statute under Exemption 3 … where 'Congress has itself made the basic decision, and has left to the administrator only the task of administration.'" *Wis. Project on Nuclear Arms Control v. Dep't of Commerce*, 317 F.3d 275, 280 (D.C.Cir.2003) (quoting *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 630 (D.C.Cir.1978)). "[T]he sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C.Cir.1978).

---

**7.** A record qualifies for disclosure if (1) an agency either created or obtained the document, and (2) "the agency is in control of the requested materials at the time the FOIA request is made." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989).

## 2. Exemption 5

FOIA Exemption 5 protects information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption has been construed by the Supreme Court to encompass all documents "normally privileged in the civil discovery context[,]" including attorney work product and attorney-client communications. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Documents covered by the deliberative process privilege—*i.e.,* "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[,]' " *id.* at 150, 95 S.Ct. 1504 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C. 1966))—are also protected under Exemption 5, in order "to enhance 'the quality of agency decisions[ ]' by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001).

## 3. Exemption 6

Exemption 6 exempts an agency from producing under FOIA "personnel and medical files and similar files," when the release of such records would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In balancing privacy and public interests, a court should "consider whether disclosure of the requested information would result in an invasion of privacy, and if so, the extent and seriousness of that invasion, as well as the extent to which disclosure would serve the public interest." *Dep't of Defense v. FLRA,* 964 F.2d 26, 29 (D.C.Cir.1992). "The only relevant 'public interest in dis-closure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding *of the operations or activities of the government.*' " *Dep't of Defense v. FLRA,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (quoting *Dept' of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)) (emphasis in original).

## 4. Exemption 7

Under Exemption 7 of FOIA, records and information compiled for law enforcement purposes are exempt from disclosure to the extent that they

(A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C. § 552(b)(7)(A)-(F). Records are considered "compiled for law enforcement purposes" if "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson v. Dep't of Justice*, 284 F.3d 172 (D.C.Cir.2002) (quoting *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C.Cir.1982)). The term "law enforcement purposes" includes civil and criminal matters. *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C.Cir.2002). In fact, the Third Circuit has held that Exemption 7 covers "data compiled in connection with an audit of an individual's tax liability[.]" *Williams v. IRS*, 479 F.2d 317, 318 (3rd Cir.1973).

## III. ANALYSIS

Judicial Watch moves for summary judgment based on the Government's alleged failure to conduct an adequate search for responsive records, "unlawful[ ] withh[olding of] ... *at least 184 pages of documents*, or portions thereof," and omission of a *Vaughn* index. Pls. Mot. at 12 (emphasis in original). Of particular concern to Judicial Watch is the Government's refusal to reveal the identity of the person(s) who requested that the organization be audited and its tax-exempt status investigated. Judicial Watch also takes issue with the Government's unilateral decision to extend the deadlines for responding to the FOIA requests.

The Government responds that the IRS, TIGTA and DOJ "conducted searches designed to locate responsive documents." Pls. Mot. at 6. The Government cross moves for summary judgment on the grounds that

> [It has] released the lion's share of documents sought in these FOIA requests, releasing over 3,100 pages in full and nearly 500 with minor redactions.... [It has] supported [the] exemption claims with sworn declarations, that describe the matters withheld and the reasons for [its] decision to withhold them. There is no dispute of material fact.

The Government also argues that the Court lacks jurisdiction over Judicial Watch's FOIA request dated December 18, 2001, because Judicial Watch has not paid an invoice for processing fees incurred in responding to that request.[8]

### A. Adequacy of the Searches

As an initial matter, Judicial Watch contends that the Government's "vague and conclusory declarations ... do not provide sufficient information to justify the withholding of documents from [Judicial Watch]." Pls. Reply at 4 (citing *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C.Cir.1987)). The alleged deficiency lies in the failure of the Government to

---

8. The Government states that the December 2001 FOIA request was not received in the IRS Headquarter's Office until February 7, 2002, by U.S. mail. Field Aff. ¶ 21. The request had been addressed to the Baltimore Disclosure Office, which on March 25, 2002, requested payment of fees for processing the request in Baltimore. Field Aff. ¶ 24; Affidavit of Melody Magin ("Magin Aff.") ¶¶ 3,4; Ex. 1 to Magin Aff. When IRS Headquarters learned that Judicial Watch had an outstanding fee assessment, the IRS ceased processing the December 2001 request pursuant to a Treasury Regulation that says a requester "shall be required to pay the full amount owed plus any applicable interest, and to make an advance payment of the full amount of the estimated fee before the Department begins to process a new request or the pending request," if a request for payment goes unpaid for more than 30 days. Field Aff. ¶ 24 (quoting 31 C.F.R. Part 1, Subpart A, § 1.7(f)(4)). The letter from the Baltimore Disclosure Office concerning fees stated, "If we do not receive your remittance within 30 days, we will assume the documents are no longer needed and will consider your request withdrawn." Exh. 1 to Magin Aff.

provide the "date, author, and recipient of each withheld document" or the reason for withholding each document, and the failure to identify "reasonably segregable portions of each document." *Id.* at 5.

After reviewing the Government's affidavits, the Court finds that they are detailed and thorough.[9] These sworn declarations identify categories of documents, the claimed exemptions, and the bases for the claims. Often, a single document is singled out because it has no other similar document with which to be grouped. Each office that received one or more FOIA requests from Judicial Watch provided detailed affidavit evidence of what it did to respond and whether it located responsive documents. The affidavits are not merely conclusory statements, but contain significant information. *Vaughn* requires the agency to provide detailed information so that a court can determine whether the agency has properly claimed exemptions or if more documents should be released.

It does not require a single format for that purpose. The 21 affidavits submitted by the Government amply suffice for purposes of examination under FOIA.[10]

Judicial Watch attacks the Government's searches because they did not turn up documents relating to "Judicial Watch's criminal conflict of interest complaints against Commissioner Rossotti, its written request to meet with the Commissioner about the retaliatory nature of the audit, and the meetings that Judicial Watch had with the IRS on January 12, 1999 and May 6, 1999." Pls. Mot. at 13. From the absence of these documents, Judicial Watch argues that the Government "intentionally failed to make a good faith effort to locate [responsive documents]." *Id.*

■ The Court disagrees with the inference Judicial Watch draws from these missing documents. In response to Judicial Watch's FOIA requests, the Govern-

---

**9.** Affidavits were submitted by Carroll Field, Rosemary O. Marcin, Jean Pate, Melody Magin, Earl Prater, Stephen Flesner, JaNean Ellis, Martha Maloney, Pamela Brown, Sue Wilson, and Mark Huneke of the IRS, each of whom attests to the efforts undertaken to search, identify, analyze and copy documents that might be relevant. Melissa D. Stuart, Disclosure Officer for TIGTA, submitted an affidavit that detailed the searches of databases for documents responsive to Judicial Watch's FOIA requests and the production, in whole or in part, of most of the documents identified. Brady J. Kiehm, from the Office of Chief Counsel of TIGTA, testified through affidavit that his office reviewed the information at issue in the five FOIA requests directed to that agency by Judicial Watch and released additional documents in July 2002 and, on referral from DOJ for analysis, in November 2002. Melanie Ann Pustay, Deputy Director of OIP, submitted an affidavit detailing the search for and review of records within the senior leadership offices of DOJ, in response to these FOIA requests. Through an affidavit submitted by Joseph S. Beck, the Criminal Division of DOJ detailed its search for respon-

sive documents, and through the affidavit of Robert Silber, the Tax Division of DOJ likewise detailed its search. All of these affiants provide significant information about the searches that were conducted, almost entirely by searches through various databases maintained by the responders.

**10.** A "party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). When responding to Judicial Watch's FOIA requests, the Government stated the exemptions on which it was relying and the documents as to which they applied, when documents were withheld in full or in part. *See* Pls. Mot. Exs. 1–21 (correspondence). The Government also submitted a Statement of Undisputed Material Facts in this case, which Judicial Watch does not challenge. Therefore, between the response letters, the undisputed facts, and the Government's affidavits, Judicial Watch now has more than "adequate specificity" to argue the legitimacy of any withholdings. *Id.* at 827.

ment searched appropriately in those places where responsive documents were most likely to be found. *See Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990). Certainly it took longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests the IRS, DOJ and TIGTA regularly receive, and the treatment of FOIA requests on a first in/first out basis. *See* Pls. Mot. Ex. 11. Perfection is not the standard by which the reasonableness of a FOIA search is measured. Judicial Watch should realize that there is always the chance that some responsive documents will not be located; given that the Government turned over more than 3,100 pages of documents, the fact that Judicial Watch can identify two other types of items (it is not clear that there would necessarily be documentation remaining from meetings between Judicial Watch and the IRS) does not indicate that the Government's searches were inadequate or made in bad faith. "It would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file[.]" *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir.1986) ("A search is not unreasonable simply because it fails to produce all relevant material[.]"); *see also Oglesby*, 920 F.2d at 68.

### B. Timing of the Responses

■ Judicial Watch complains that the Government "ha[s] improperly attempted unilaterally on multiple occasions to extend its response deadline with no valid factual or legal basis for doing so." Pls. Mot. at 13. While this may be true, the Government has since responded—albeit, in an allegedly insufficient manner—to Judicial

Watch's FOIA requests, thereby rendering moot the issue of the Government's timeliness. *Wagner v. FBI*, No. 90–1314, 1991 U.S. Dist. LEXIS 7506, at *9 (D.D.C. June 4, 1991).

After receiving a FOIA request, an agency has twenty days to determine whether it will comply with the request and so notify the requester; if the agency makes an adverse determination and the requester appeals, the agency has twenty business days to decide the appeal. 5 U.S.C. § 552(a)(6)(A)(i)-(ii). There are often instances when an agency will not be able to meet the first deadline. In such situations, the requester can immediately sue to obtain the requested records and he "shall be deemed to have exhausted his administrative remedies" because of the agency's tardiness. 5 U.S.C. § 552(a)(6)(C). "At that time, the court may determine that the agency has been diligently working on a response to the request, but has been unable to meet the deadlines because of exceptional circumstances, and may grant an extension of time to allow the agency to finish reviewing the request." *Oglesby v. Dep't of the Army*, 920 F.2d at 62. Thus, Judicial Watch had the option of immediately suing when the Government failed to respond within the statutory time limit (except for the IRS office in Cincinnati, which was timely). Perhaps recognizing the unreasonableness of such a prompt suit given the breadth of its requests, Judicial Watch made a strategic decision to wait for certain responses. If a requester actually receives an agency's untimely response before filing suit under § 552(a)(6)(A)(i), he must utilize the administrative appeals process—which includes, as a final step, the right to sue in federal court—to resolve any FOIA disputes.[11] *Id.* at 63.

---

11. Some of Judicial Watch's FOIA requests were responded to prior to the filing of this

lawsuit. It is unclear whether Judicial Watch exhausted its administrative remedies with re-

## C. Withholding by the IRS

In response to Judicial Watch's two October 1998 FOIA requests (treated as one by the IRS), the IRS produced 128 pages of documents in full or in part, withholding only complainants' names, addresses and other identifying information. Field Aff. ¶ 8. The IRS released 515 pages in full or in part, again withholding only complainants' names, addresses and other identifying information, in response to the FOIA requests received in April 2000, January 2001 and July 2001. *Id.* ¶ 16. A further response to these same requests provided 1,313 documents in whole or in part. *Id.* ¶ 17. One page that "reflects discussion between IRS employees and employees of Chief Counsel" was withheld. *Id.* 292 pages were withheld in full, including 195 pages of material under the jurisdiction of the Joint Committee on Taxation ("JCT"), 54 pages of a third party's FOIA request on himself, 37 pages relating to a lawsuit involving third parties, and six pages of third-party return information. *Id.* With respect to the two FOIA requests from Judicial Watch in August 2001, the IRS identified 277 pages of potentially responsive documents. *Id.* ¶ 21. The IRS withheld in full 40 pages of documents, four of which were referred to the Department of the Treasury for review, and produced all others in full or in part. *Id.* The IRS has not yet responded to Judicial Watch's December 2001 request, due to litigation over the organization's fee waiver status. *Id.* ¶ 25.

Judicial Watch asserts that the IRS is not entitled to withhold or redact any records under the FOIA exemptions cited. Specifically, Judicial Watch challenges the agency's refusal to produce (1) the identity of the organization's accusers, (2) informa-tion concerning "lower-level" IRS employees, and (3) internal communications among, and draft opinions of, IRS lawyers. The Government places the IRS's withheld information into the following categories.

### 1. JCT Records

The first category encompasses materials relating to a 195–page JCT report. Lindy L. Paull, Chief of Staff of the JCT, attested that, in March 1997, the staff of that congressional committee was directed by its chairman, vice-chairman and ranking members "to investigate whether the IRS's selection of tax-exempt organizations ... for audit has been politically motivated ...." Affidavit of Lindy L. Paull ("Paull Aff.") ¶ 7. On May 26, 1999, the JCT faxed a draft of a report on this investigation to the IRS for the purpose of confirming its facts. *Id.* ¶ 8. The fax cover sheet stated, "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee." *Id.* Ms. Paull explained in her affidavit that "[t]his language is used by the JCT to reflect its intent that the document in question remain under the control of the JCT and not be subject to the 'free disposition' of the IRS, *see Goland v. CIA,* 607 F.2d 339, 346–47 (D.C.Cir.1978), and it thereby retain its character as a congressional record for purposes of [FOIA]." *Id.*

> The Internal Revenue Manual recognizes that documents generated in response to JCT requests must not be disclosed to the extent that they reveal the existence or substance of a JCT request. The JCT also relied upon this policy and this understanding of its course of dealing with the IRS. There-

spect to these requests. Given that the parties do not raise this issue in their briefs, the

Court will proceed to rule on the merits.

fore, the draft report and all documents prepared in response to that draft, including the draft report with handwritten comments by the IRS, and the reference materials prepared to provide JCT with a status report on certain IRS cases are congressional records and not agency records subject to the coverage of FOIA.

*Id.* ¶ 14.

■ As described above, the relationship between the JCT and the IRS, over which JCT has oversight responsibility and a policy-making role, is formally recognized in the Internal Revenue Manual. Documents sent to the IRS by the JCT for review and comment, as well as documents generated by the IRS solely in response to an inquiry from the JCT, are not "agency records" for purposes of FOIA. *United We Stand Am. v. IRS*, 219 F.Supp.2d 14 (D.D.C.2002). Therefore, the Court finds that the IRS properly withheld this material.

### 2. Complainants' Names and Addresses

Most of the information the Government redacted from the documents produced to Judicial Watch consisted of the names, addresses and other identifying information of people who wrote to the IRS or DOJ— either directly or through their elected public officials—complaining about whether Judicial Watch should retain its tax-exempt status or decrying the audit and investigation of that organization. Affidavit of Sarah Tate ("Tate Aff.") ¶ 9 (redactions from 281 pages to protect names, addresses and postal bar codes); Field Aff. ¶¶ 8, 16, 17 (same). The IRS relies upon FOIA Exemption 3 (in connection with 26

U.S.C. §§ 6103(a) and 6103(e)(7)), Exemption 6, and Exemptions 7(A) and 7(C) to support these withholdings.

■ Judicial Watch asserts that the IRS cannot refrain from producing these names and addresses unless it can prove that the writers "spoke with an understanding of confidentiality." Pls. Mot. at 15 (citing *Dep't of Justice v. Landano*, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) ("A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes.")). This argument, however, fails to distinguish Exemption 7(D), to which *Landano* spoke, from Exemptions 7(A) and 7(C), on which the IRS bases its refusal to release the names and addresses of those who complained about Judicial Watch. Instructed by *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C.Cir.1991), the Court will apply the "categorical" holding that Judicial Watch is not entitled to these names and addresses under Exemption 7(C) absent "compelling evidence that the agency is engaged in illegal activity[.]" *Id.* at 1205–06. Judicial Watch has pointed to no compelling evidence that the IRS targeted it for audit and investigated its tax-exempt status because of its activities *vis-a-vis* former President Clinton, except for the timing between the two activities, which made the organization suspicious. Since even grounded suspicions are not compelling evidence, the IRS is entitled to rely on Exemption 7(C) to withhold the names and addresses of those who complained about or praised Judicial Watch.[12]

12. Having found that the Government properly relied on Exemption 7(C) (invasion of personal privacy), the Court need not address the applicability of Exemption 7(A) (interference with law enforcement). The affidavits on this point from the IRS are less than satisfactory, asserting that Judicial Watch might "target these individuals for continuing contact and

■ The same result obtains under Exemption 3 because the names and addresses of those who wrote to the IRS constitute "return information" protected from disclosure under 26 U.S.C. § 6103(a). *Landmark Legal Found. v. IRS,* 267 F.3d 1132 (D.C.Cir.2001). Section 6103(a), which is a withholding statute under Exemption 3, *see Church of Scientology of Calif. v. IRS,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987), prohibits any federal employee from disclosing "returns and return information" unless some other provision of Title 26 allows disclosure. The terms "returns and return information" are broadly defined in that statute to include, in addition to a normal tax return, "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary [of the Treasury] with respect to a return or with respect to the determination of the existence, or possible existence, of liability ... for any tax ...." 26 U.S.C. § 6103(b)(2); *see Landmark Legal Found.,* 267 F.3d at 1135 (holding that "the identities of third parties who request[ ] audits or investigations of tax-exempt organizations[,] ... and any other material or information included in those third-party requests[,]" constitute "return information" under § 6103(b)).

### 3. "Lower–Level" IRS Employee Names

■ The IRS acknowledges that it "redacted from documents released in part the names of lower-level agency employees who performed only ministerial functions and lacked decision-making authority." [13]

Def. Mot. at 8. Judicial Watch states that it does not have an interest in the home telephone numbers of IRS employees; however, it objects to the Government's contention that "personal privacy interests serve as a basis for withholding the names of 'lower-level' IRS employees involved in the audit of Judicial Watch." Pls. Reply at 9. First, Judicial Watch asserts that the Government is precluded from asserting any exemption in that it had not filed a *Vaughn* index with the specificity demanded by Judicial Watch. The Court finds that this argument misapprehends the agency's obligations. When challenged, an agency must provide sufficient specificity in describing documents that were withheld and the bases therefore, so that the requester and the Court can evaluate that reasoning. The Court finds that these defendants have sufficiently explained their process and determinations to allow a challenge by Judicial Watch and review by the Court.[14]

■ Judicial Watch next argues that the requested records relate to formal business of the federal government, in which the employees can have no reasonable expectation of privacy. *Id.* The Court disagrees. The documents in question relate to an on-going civil investigation by IRS and are exempt under Exemption 7(A). Disclosing the names of specific employees who are performing audit work, on balance, would not reveal sufficiently how the IRS is conducting its work to outweigh those employees' legitimate privacy expectations. Collecting taxes is an unpopular

possibly harassment." Tate Aff. ¶ 9; Affidavit of Michael Frosch ¶ 6. There is no evidentiary basis for these concerns and neither Ms. Tate nor Mr. Frosch identifies a uniform policy that would apply Exemption 7(A) with such a broad brush.

**13.** The Government redacted "home addresses and phone numbers, social security num-

bers, dates of service and pay information, as well as personal financial and other information, including memberships in clubs and social organizations, past military service and employment, and information about personal finances and investments." Def. Mot. at 8.

**14.** For this reason, Judicial Watch's request for discovery is denied.

job, to put it mildly, and IRS "lower-level" employees are entitled to some identity protection, unless and until the need for that information is better demonstrated by a FOIA requester or there is compelling evidence of illegal agency activity.

### 4. "Return Information" of Taxpayers

The next category of withheld records consists of the "return information" of taxpayers who are not parties to this lawsuit. The IRS withheld six pages of "return information" under Exemption 3 and 26 U.S.C. § 6103(a). Tate Aff. ¶ 6. For obvious reasons, the Court sees no problem with such nondisclosure. *See supra* III. C.2.

### 5. Ethics in Government Act

■ Invoking Exemption 3, the IRS withheld in full seven pages of documents subject to the Ethics in Government Act of 1978 ("EGA"), which requires federal government employees to file certain information with their employing agency. Tate Aff. ¶ 8. Two courts have held that the EGA is an exempting statute under Exemption 3 of FOIA. *See Meyerhoff v. EPA*, 958 F.2d 1498, 1502 (9th Cir.1992); *Church of Scientology v. IRS*, 816 F.Supp. 1138, 1152 (W.D.Tex.1993). This Court concurs with their reasoning on this issue and, accordingly, upholds the Government's withholding of these records.

### 6. Internal Communications of Lawyers

The IRS withheld portions of two pages from its investigative files: the first is an e-mail involving a communication from IRS audit supervisors to counsel seeking legal advice about issues in the IRS's audit of Judicial Watch, the other is an e-mail among IRS employees regarding the processing of a FOIA request. Tate Aff. ¶ 10. The IRS relies upon FOIA Exemptions 3, 5, and 7(A) to support these redactions.

In response, Judicial Watch argues that the IRS may not withhold internal communications between its lawyers based on the affidavits of Ms. Tate and Mr. Frosch, who presume that Judicial Watch would " 'create, hide, or destroy documents or other evidence' " if they knew the thought processes and analyses of IRS lawyers. Pls. Reply at 10 (quoting Frosch. Aff. ¶ 7). Judicial Watch is offended by these characterizations and asserts that they should be given no weight by the Court.

■ There is an on-going IRS audit of Judicial Watch and an investigation into its tax-exempt status, which are civil proceedings covered by Exemption 7. Releasing documents that would reveal IRS analyses "could reasonably be expected to interfere with enforcement proceedings[.]" 5 U.S.C. § 552(b)(7)(A). This possibility for interference exists regardless of the person or entity under review, or the statements that Judicial Watch finds offensive. No conclusions have been reached; any documents at issue here represent, at best, the development or draft of a conclusion. Since the IRS Commissioner might ultimately reach any determination he selects among options developed by his staff, or refuse to find merit in any of them, there is a serious potential for interference with his discretion if those options were prematurely revealed. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

The redaction in the first e-mail is also upheld under Exemption 5 as an attorney-client communication and falling under the deliberative processes privilege, which also protects the second e-mail.

### 7. Employment Issues

The final category of information withheld by the IRS consists mainly of a 16–page "memorandum of law from the Associate Chief Counsel (General Legal Ser-

vices) to the Associate Commissioner (Business Systems Modernization), addressing the private financial interests of a prospective IRS employee." Defs. Mot. at 9. Another 18 pages of such personal and financial information from prospective employees also were withheld, as well as three pages that reflect communications among IRS attorneys concerning whether a specific activity by a former IRS employee might create a post-employment conflict of interest. The IRS invokes Exemptions 5 and 6 as grounds for its nondisclosure.

█ The Court agrees that these documents were properly withheld. A prospective federal employee retains reasonable expectations of privacy concerning personal financial affairs that only become publically relevant if he becomes a hired employee. *See Commodity News Serv., Inc. v. Farm Credit Admin.*, No. 88–3146, 1989 WL 910244, , at *2–3 (D.D.C. July 31, 1989). The harm that such a candidate might experience to his privacy outweighs the public's gain in receiving these documents. *See Judicial Watch, Inc. v. Reno*, No. 00–723, 2001 WL 1902811, at *7 (D.D.C. Mar. 30, 2001). The memorandum is also protected by the attorney-client privilege and the attorney work product doctrine incorporated into Exemption 5. *Sears*, 421 U.S. at 132, 95 S.Ct. 1504. Similarly, an individual who has leaves public service regains, in large measure, his right to personal privacy under Exemption 6. Judicial Watch makes no direct argument about these three pages, as indeed they do not about any of the withheld documents. Since the private harm to the former IRS employee's privacy interest is readily perceived and the public gain is undefined by Judicial Watch, the Court agrees that Exemption 6 applies to these pages.

### D. Withholding by TIGTA

Unlike the IRS, TIGTA located no documents responsive to Judicial Watch's two October 1998 FOIA requests. When TIGTA received Judicial Watch's April 2000 request, the agency's responsibilities had expanded to the include the duties of IRS Inspection. TIGTA searched all files and released approximately 171 pages of documents in full or in part and completely withheld 17 pages. In response to a January 2001 request, TIGTA released approximately 691 pages documents in full or in part and withheld 57 in full. TIGTA advised Judicial Watch, in response to requests made in July 2001 and December 2001, that it found no responsive documents other than those already been provided. After this lawsuit was filed, an additional 31 pages of documents were released in full or in part from those documents previously withheld. On referral from DOJ, TIGTA also reviewed and withheld a one-page transcript of a voicemail from an investigator to an attorney with DOJ and a five-page outline of TIGTA investigations. *See* Affidavit of Brady J. Kiehm ("Kiehm Aff.") ¶ 4, 5. A later referral from DOJ led TIGTA to release an additional 12 pages in whole or in part. *Id.* ¶ 6.

The types of information withheld in full or in part by TIGTA are nearly identical to those withheld by the IRS; the analysis above applies here. Under FOIA Exemptions 7(A) and 7(C), TIGTA withheld 15 pages in full and redacted material from 24 pages containing "information that would identify people who wrote to the IRS or to TIGTA ... expressing concerns about whether Judicial Watch was complying with the laws that govern its tax exempt status." *Id.* ¶ 8. TIGTA asserted Exemptions 6 and 7(C) as the legal justification for withholding 15 pages in full and 27 pages in part, "as they contain information that would identify IRS employees or provide information that would otherwise in-

fringe on their personal privacy." *Id.* ¶ 9. Sixteen complete pages and 15 partial pages that contain "return information" of third party taxpayers have been withheld pursuant to Exemptions 3 and 7(C). *Id.* ¶ 10, 11. Finally, TIGTA redacted from one page of an interview memorandum information protected by Exemption 7(A) and the deliberative process privilege under Exemption 5.

With one exception, the Court finds that the documents withheld in full and in part by TIGTA are reasonably described in the affidavits and that TIGTA has aptly demonstrated the applicability of its claimed FOIA exemptions. Regarding the correspondence from third-party complainants on Judicial Watch's tax-exempt status, Mr. Kiehm provided the Court with no reason why TIGTA could not redact identifying information from the 15 pages withheld in full, as it did with the 24 pages that were partially produced. Without that information, the Court cannot determine whether it is necessary to withhold these documents in full or whether the personal information could be segregated. Accordingly, the Court will direct TIGTA to supplement the record with a brief and affidavit(s) addressing this segregability issue in sufficient detail.

### E. December 2001 FOIA Request

As of the time the parties briefed this case, the IRS had not responded to Judicial Watch's December 2001 FOIA request because of a dispute over a fee waiver involving Judicial Watch and the Baltimore Disclosure Office. The Government argued that "Judicial Watch may not file suit to compel the IRS to produce those documents until *after* it has paid the fees and the IRS has not responded." Defs. Motion at 34; *see Oglesby*, 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."). That dispute

appears to have been resolved in favor of Judicial Watch; the D.C. Circuit has held that Judicial Watch is entitled to a waiver of fees. *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C.Cir.2003). As a result, the Court finds that Judicial Watch's challenge to the failure of the IRS to respond to the December 2001 request is ripe and not barred by a failure to exhaust its administrative remedies. Judicial Watch brought this suit more than twenty days after its December 2001 FOIA request and before any substantive response from the Government. Because Judicial Watch was entitled to a fee waiver from the Baltimore Disclosure Office, the organization had no obligation to pursue administrative appeals for this request.

The Court has not been advised by the parties as to the current status of the December 2001 FOIA request. Therefore, the Court will direct them to file a joint notice within 30 days addressing whether that request has been fully complied with, whether there are documents that have been withheld in whole or in part, whether Judicial Watch disputes any redactions or withholdings, and whether the Government needs additional time to respond fully.

### IV. CONCLUSION

For these reasons, both cross motions for summary judgment are granted in part and denied in part. Within 30 days, TIGTA will supplement the record with a brief and affidavit(s) addressing the potential segregability of the exempted information in the completely withheld documents described in Paragraph 8 of Mr. Kiehm's affidavit. Judicial Watch will have 21 days to respond to this filing and TIGTA will have seven days to reply. In addition, within 30 days, the parties will file a joint notice on the status of Judicial Watch's December 2001 FOIA request. A sepa-

rate order accompanies this memorandum opinion.

## ORDER

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that Defendants' cross motion for summary judgment is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that, within 30 days, Defendant TIGTA will supplement the record with a brief and affidavit(s) addressing the potential segregability of the exempted information in the completely withheld documents described in Paragraph 8 of Brady J. Kiehm's affidavit. Plaintiffs will have 21 days to respond to this filing and Defendant TIGTA will have seven days to reply. It is

**FURTHER ORDERED** that, within 30 days, the parties will file a joint notice addressing whether Plaintiffs' December 2001 FOIA request has been fully complied with, whether there are documents that have been withheld in whole or in part, whether Plaintiffs dispute any redactions or withholdings, and whether Defendants need additional time to respond fully.

**SO ORDERED.**